UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| NOWAK DENTAL SUPPLIES, INC. , | : | |
| | : | Docket No.: _____ |
| Plaintiff, | : | |
| | : | <u>Complaint</u> – <u>Class Action</u> |
| v. | : | |
| | : | <u>JURY TRIAL DEMANDED</u> |
| DENTSPLY INTERNATIONAL, Inc., | : | |
| | : | |
| Defendant. | : | |
| | : | |

1.    Nowak Dental Supplies, Inc. ("Nowak" or "Plaintiff"), brings this

class action on behalf of itself and all others similarly situated, and avers as

follows, on information and belief:

## NATURE OF THE ACTION

2.    Plaintiff is a distributor of prefabricated artificial teeth, that, at all

relevant times, bought such teeth directly from defendant Dentsply International,

Inc. ("Dentsply" or "Defendant").  Nowak brings this civil action for damages because the prices that it and other members of the Class (defined below) paid for artificial teeth were artificially inflated due to Dentsply's conduct.

3.    Absent Dentsply's anti-competitive conduct, Plaintiff and the other Class members would have paid less for artificial teeth purchased during the Class Period (defined below).  Prices for these products would have been lower with unfettered competition because absent the exclusionary conduct: (a) Dentsply's prices to members of the Class for artificial teeth would have been lower; and, (b) members of the Class would have replaced some of their artificial teeth purchases from Dentsply with less-expensive dental products sold by Dentsply's competitors. As a result of Dentsply's unlawful conduct, Plaintiff and the other Class members paid overcharges on their purchases of artificial teeth throughout the Class Period.

4.    Dentsply's anti-competitive practices center around an intentional and concerted effort to deny its competitors access to the market for artificial teeth by imposing upon dental supply dealers exclusive dealing requirements forbidding purchase of artificial teeth manufactured by Dentsply's competitors, threatening to terminate or in fact terminating dealers who purchased and distributed such competing goods, and refusing to deal with dealers who distributed competing tooth lines.  These practices had the effect of suppressing and foreclosing

2

competition from products sold by other manufacturers, thus enabling Dentsply to

charge prices for artificial teeth substantially above competitive levels, and drive

up prices for all artificial teeth in the relevant market.

5.    Dentsply's imposition of exclusive dealing requirements (and

retaliation against certain dealers who refused to abide by its demands) was

particularly effective because of Dentsply's dominant share of the market for

artificial teeth.  Many dealers were faced with a Hobson's choice: restrict

themselves to only Dentsply teeth (and the monopoly prices Dentsply could extract

for such products), or be denied the opportunity to carry such products which, at all

relevant times, constituted 80% or more of the market for prefabricated artificial

teeth in the United States.

6.    The cumulative effect of Dentsply's exclusionary conduct has been to

foreclose competing manufacturers of artificial teeth from a substantial portion of

the market, and to prevent them from (a) gaining market share, and (b) achieving

economies of scale and scope, thus driving up prices in the market for artificial

teeth.  As a result, Plaintiff and the other members of the Class that Plaintiff seeks

to represent have paid supra-competitive prices for the artificial teeth at issue in

this complaint.

7.    In 1999, the Department of Justice filed an antitrust suit against Dentsply and succeeded in obtaining entry of an injunction against Dentsply by the United States District Court for the District of Delaware, based upon the Third Circuit's finding that Dentsply violated Section 2 of the Sherman Act as a result of the acts detailed herein.  The Third Circuit expressly found that distributors, such as Plaintiff Nowak, are direct purchasers who would be harmed if Dentsply's exclusionary conduct resulted in artificial tooth prices higher than would have been charged but for that conduct.  The final findings of fact and conclusions of law in the Delaware litigation will be binding upon Dentsply in the instant action pursuant to the judicial principle of collateral estoppel.

## JURISDICTION AND VENUE

8.    This Complaint is filed and these proceedings are instituted under Section 4 of the Clayton Act, 15 U.S.C. § 15, to recover treble damages and the costs of suit, including a reasonable attorneys' fee, for the injuries sustained by Plaintiff and members of the Class resulting from violations by the Defendant, as hereinafter alleged, and under Section 2 of the Sherman Act, 15 U.S.C. § 2.  The jurisdiction of this Court is based upon 28 U.S.C. §§ 1331 and 1337(a) and 15 U.S.C. § 15.

9.    The Defendant named herein is found or transacts business within this judicial district, and the interstate trade and commerce, hereinafter described, is carried out, in substantial part, in this district. Venue, therefore, is appropriate within this district under 15 U.S.C. §§ 22 and 28 U.S.C. § 1391(b) and (c).

10.    The Court has personal jurisdiction over Dentsply pursuant to Section 12 of the Clayton Act, 15 U.S.C. § 22.

## THE PARTIES

11.    Plaintiff Nowak Dental Supplies, Inc. is a Louisiana corporation with a business address of 6716 Hwy 11 North, Carriere, MS 39426. At all relevant times, Nowak purchased prefabricated artificial teeth directly from Dentsply and was injured thereby.

12.    Defendant Dentsply International Inc. is a Delaware corporation with corporate headquarters in York, Pennsylvania. Dentsply is a leading manufacturer and worldwide distributor of products and equipment for the dental market. Dentsply's total net sales in 2001 were approximately $1.1 billion. Through its Trubyte division, Dentsply manufactures and markets products used by dental laboratories to make dentures and other removable dental prosthetics. Dentsply regularly transacts business in this judicial district. Dentsply has had a high and/or dominant market share of the market for prefabricated artificial teeth in the United

5

States.

## CLASS ACTION ALLEGATIONS

13.    Plaintiff brings this action as a class action pursuant to the Federal

Rules of Civil Procedure 23(a) and (b)(3), and in accordance with M.D. Pa. Local

Rule 23.2, on its own behalf and as representatives of the following class of

persons and entities ("the Class"):

> All persons and entities who purchased prefabricated artificial teeth in
> the United States directly from Dentsply at any time during the period
> January 5, 1995, through the present (the "Class Period"). The Class
> excludes Dentsply, and Dentsply's parents, subsidiaries and affiliates.

14.    Joinder of all Class members is impracticable.  While the size of the

Class is not yet known with certainty, based on the nature of the trade and

commerce involved, Plaintiff reasonably believe that there are dozens of members

in the Class. Class members are geographically dispersed throughout the United

States.  The Class members are readily identifiable from information and records in

Dentsply's exclusive possession.

15.    Questions of law and fact are common to the Class, including but not

limited to:

    a.    whether Defendant obtained and maintained monopoly power

in the market for prefabricated artificial teeth in the United States;

    b.    whether Defendant obtained and/or maintained monopoly

power in the relevant market through anti-competitive and unlawful activity;

      c.     whether Defendant engaged in conduct which had the purpose and/or effect of unreasonably restraining competition and limiting purchaser access to competing prefabricated artificial teeth;

      d.     whether Defendant's unreasonably anti-competitive conduct has caused Plaintiff and the other members of the Class to suffer antitrust injury in the form of overcharges;

      e.     whether Dentsply's unlawful conduct caused Plaintiff and other Class members to pay more for prefabricated artificial teeth than they otherwise would have paid; and

      f.     the appropriate Class-wide measure of damages.

16.    Plaintiff's claims are typical of the claims of the members of the Class. Plaintiff and other Class members are direct purchasers of prefabricated artificial teeth and were overcharged, and thus injured by, the same wrongful conduct of Defendant.  Defendant's violation of the antitrust laws, the effects of such violations, and the relief sought are all issues or questions that are common to Plaintiff and the other Class members.

17.    As representative of the Class, Plaintiff will fairly and adequately protect the interests of all Class members, and has engaged counsel experienced

and competent in antitrust and class litigation. The interests of the Plaintiff are coincident with, and not antagonistic to, the interests of the other Class members.

18.    The questions of law and fact that are common to the members of the Class predominate over any questions affecting only individual Class members. Whatever possible difficulties may exist in the management of the class action are greatly outweighed by the advantages of the class action procedure. Those advantages include, but are not limited to, providing Class members with a method for redress of claims that might otherwise not warrant individual litigation.

19.    Class action treatment is a superior method for the fair and efficient adjudication of the controversy, in that, among other things, such treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of evidence, effort, and expense that numerous individual actions would engender. A class action enables injured persons or entities to obtain redress on claims that might not be practicable to pursue individually. Class treatment also eliminates the potential for inconsistent adjudications.

## FACTUAL ALLEGATIONS

**I.     The District Court Action**

20.    In 1999, the United States brought suit against Dentsply in the District

of Delaware, for, *inter alia*, violations of Section 2 of the Sherman Act arising

from Dentsply's foreclosure of competition in the market for artificial teeth. See

United States v. Dentsply Int'l, Inc., 99-cv-005 (D. Del.) (SLR). Following a

bench trial, the Delaware court made detailed *findings of fact* regarding the market

for artificial teeth in the United States, and the exclusionary nature of Dentsply's

actions therein. These findings were either affirmed or left undisturbed by a

subsequent opinion of the Third Circuit.

21.     As an initial matter, the District Court determined that Dentsply had

dominated the market for artificial teeth used in the United States "for at least ten

years" and had a 75%-85% share of the market for prefabricated artificial teeth in

the United States on a revenue basis, and was 15 times larger than its next closest

competitor. See United States v. Dentsply Int'l, Inc., 277 F.Supp.2d 387, 423 (D.

Del. 2003).

22.     The District Court recited voluminous anecdotal evidence establishing

that, starting at least as early as 1987, Dentsply decided to leverage this dominant

share of the artificial tooth market in order to "lock up" the most efficient means of

artificial tooth distribution (the dental supply dealers), thereby substantially

foreclosing effective competition from other artificial tooth manufacturers seeking

to enter or expand into the U.S. market. Id. at 412–413. Dentsply achieved this

9

purpose by rigorously promoting a policy of discouraging its dealers from adding

competitors' teeth to their lines of products, and enforcing such policy by

threatening to terminate (or in fact terminating) dealers who refused to comply. Id.

at 412–419. Notably, before Dentsply imposed its restrictive dealing requirements

in the late 1980s, Dentsply did not restrain Class members' ability to sell the

artificial teeth of other manufacturers. Id. at 413.

23.     Subsequently, in 1993, Dentsply decided to formalize its exclusionary

policy through the imposition of written "Dealer Criteria" for its Trubyte Division.

These Dealer Criteria set forth various conditions for continuing as, or becoming, a

dealer of Trubyte products. "Dealer Criterion Number 6" states that dealers that

are recognized as authorized distributors "may not add further tooth lines to their

product offering." Id. at 412. Thus, in enacting Dealer Criterion 6, Dentsply

expressly stated its refusal to do business with dealers that added its rivals' tooth

lines. Id. at 413.

24.     As it had with its unwritten policies, Dentsply actively monitored

compliance with Dealer Criteria 6, and enforced the criteria by warning dealers not

to add new lines of teeth, terminating dealers that did add new lines, and

compelling some dealers to enter into express agreements to assure their partial or

complete compliance with the criteria. Id. at 412–419. Furthermore, when

threatening to terminate a dealer, Dentsply also threatened a refusal to sell any

other merchandise to that dealer, "as additional leverage in coercing dealers to

agree not to add competing tooth lines." Id. at 420.  Even Dentsply dealers who

merely acquired non-Dentsply dealers were required to drop the non-Dentsply

lines of the acquired dealers. Id. at 412–413. Meanwhile, consistent with Dealer

Criterion 6, most new dealers were accepted by Dentsply only when they dropped

their sales of non-Dentsply teeth.  Id. at 414.

     25.    Dentsply's dealer policies, embodied in Dealer Criterion 6, were

intended to have, and did have, the effect of foreclosing Dentsply's competitors'

access to dental supply dealers. Id. at 419–422.  Moreover, there can be no doubt

of the exclusionary intent behind Dentsply's conduct.  Dentsply has admitted that

the express purpose of Dealer Criterion 6 was to "block competitive distribution

points" and "tie up dealers".  As Gordon Hagler, Trubyte's Director of Sales and

Marketing from 1989-93 stated on the record, the purpose of Dealer Criterion

Number 6 was "solely" to exclude Dentsply' s competitors from the dealers so that

Dentsply's competitors' teeth could not effectively be sold to dental laboratories.

As Hagler stated about Dealer Criterion 6:

> You don't want your competition with your distributors, you don't
> want to give the distributors an opportunity to sell a competitive
> product.  And you don't want to give your end user, the customer,
> meaning a laboratory and/or a dentist, a choice.  He has to buy

Dentsply teeth. That's the only thing that's available. The only place
you can get it is through the distributor and the only one that the
distributor is selling is Dentsply teeth. That's your objective.

Id. at 420.

26.     Finally, the District Court concluded that Dentsply's alleged

justification for Dealer Criterion 6 was pretextual and did not excuse its

exclusionary practices. Its asserted justifications were inconsistent with its own

announced reason for its exclusionary policies, its conduct enforcing the policy, its

rival suppliers' actions, and dental supply dealers' behavior in the marketplace.

Moreover, its exclusionary intent was also apparent from its use of non-tooth

products as additional leverage in coercing dental supply dealers to agree not to

add competing tooth brands. Id. at 440–49.

## II.    The Third Circuit Opinion

27.     In an opinion dated February 24, 2005, the Third Circuit, having

reviewed the record below and the prior findings of the District Court, reexamined

Dentsply's conduct, and made additional findings regarding the relevant market

and the effects of Dentsply's exclusionary conduct. See United States v. Dentsply

Int'l, Inc., 399 F.3d 181 (3d Cir. 2005).

28.     First, the Court made findings regarding the important role dental

supply dealers play in the market for artificial teeth. Id. at 191–193. Although

12

some artificial tooth manufacturers sell directly to dental laboratories, Dental
supply dealers such as Nowak have been, and continue to be, the primary channel
of distribution of artificial teeth to dental laboratories. Such dealers provide
efficiencies of scale that reduce distribution costs, and take on credit risks that
manufacturers otherwise would have to assume if selling to laboratories directly.
Id. Dealers also provide one-stop shopping for products manufactured by various
suppliers, as well as one-stop returning of products manufactured by various
suppliers. As a result, manufacturers of artificial teeth need to distribute through
local dental supply dealers throughout the country in order to compete effectively.
Id. at 193 ("The benefits that dealers provide manufacturers help make dealers the
preferred distribution channels - in effect, the 'gateways' - to the artificial teeth
market. [Selling directly to dental laboratories] is 'viable' only in the sense that it
is 'possible,' not that it is practical or feasible in the market as it exists and
functions.")

29.    Thus, because of dealers' key role in the distribution chain, Dentsply's
efforts to deny competitors' access to dealers effectively foreclosed competitors
from a substantial portion of the market.  As the Court observed, "[t]he reality is
that over a period of years, because of Dentsply's domination of dealers, direct
sales have not been a practical alternative for most manufacturers. It has not been

so much the competitors' less than enthusiastic efforts at competition that produced

paltry results, as it is the blocking of access to the key dealers. This is the part of

the real market that is denied to the rivals." Id. at 189.

30.     In short, given Dentsply's monopoly share of the market, and

Dentsply's demand that its dealers comply with its exclusive dealing requirements,

the Third Circuit concluded: "The evidence demonstrated conclusively that

Dentsply had supremacy over the dealer network and it was at that crucial point in

the distribution chain that monopoly power over the market for artificial teeth was

established. The reality in this case is that the firm that ties up the key dealers rules

the market." Id. at 190. As a result, Dentsply's exclusionary policies harmed

competition in the market for artificial teeth.  Id. at 191 ("By ensuring that the key

dealers offer Dentsply teeth either as the only or dominant choice, Dealer Criterion

6 has a significant effect in preserving Dentsply's monopoly. It helps keep sales of

competing teeth below the critical level necessary for any rival to pose a real threat

to Dentsply's market share. As such, Dealer Criterion 6 is a solid pillar of harm to

competition.")

31.     Furthermore, the Court found that Dentsply's control over prices for

its artificial teeth was indicative of market power: "Dentsply did not reduce its

prices when competitors elected not to follow its increases. Dentsply's profit

14

margins have been growing over the years. . . . The results have been favorable to Dentsply, but of no benefit to consumers." Id. at 190–191. Regardless of the magnitude of the premium Dentsply's extracted, "[t]he record of long duration of the exclusionary tactics and anecdotal evidence of their efficacy make it clear that power existed and was used effectively." Id.

32.    Based on these findings of fact, the Third Circuit concluded that, (a) Dentsply had power in the relevant market for prefabricated artificial teeth in the United States, and (b) Dentsply maintained that power by means of improper exclusionary conduct: "Dentsply's grip on its 23 authorized dealers effectively choked off the market for artificial teeth, leaving only a small sliver for competitors. The District Court erred when it minimized that situation and focused on a theoretical feasibility of success through direct access to the dental labs. While we may assume that Dentsply won its preeminent position by fair competition, that fact does not permit maintenance of its monopoly by unfair practices. We conclude that on this record, the Government established that Dentsply's exclusionary policies and particularly Dealer Criterion 6 violated Section 2." Id. at 196.

33.    Following the Third Circuit's decision, the District Court entered judgment for the Government, and further granted significant and comprehensive

injunctive relief designed to bar Dentsply from instituting and/or enforcing

exclusive dealing arrangements with dental supply dealers. See United States v.

Dentsply Int'l, Inc., 2006 U.S. Dist. LEXIS 94907 (D. Del., Apr. 26, 2006). The

opinions of the District Court and Third Circuit are now final and not subject to

further court review.

34.    Under Section 5(a) of the Clayton Act, 15 U.S.C. Sec. 16(a), and the

collateral estoppel doctrine, the findings and conclusions of the Third Circuit in

United States v. Dentsply International, Inc., 399 F.3d 181 (3d Cir. 2005), cert.

denied, 126 S.Ct. 1023 (Jan. 9, 2006), and the undisturbed findings of the

Delaware District Court, are conclusive in the instant action as against Dentsply,

and Dentsply is estopped from contesting the same in this action.

## ANTICOMPETITIVE EFFECTS OF DENTSPLY'S CONDUCT

35.    The overall effect of Dentsply's anti-competitive, exclusionary acts

has been to substantially foreclose and impair competition (and the threat of such

competition) from lower-priced and/or superior quality prefabricated artificial

teeth.

36.    Dentsply's refusals to deal, restrictive dealing requirements, and other

anticompetitive acts as alleged in this Complaint have effectively deprived rival

tooth

16

manufacturers of access to the vast majority of, and the most important and efficient, sales outlets for artificial teeth in the United States and, therefore, of the ability to compete effectively in the United States market for prefabricated, artificial teeth.

37.    Absent the challenged conduct, and the substantial foreclosure and impairment of effective competition caused by such conduct, Dentsply, as a rational manufacturer, would have reduced its prices as a response to the added competitive pressure that would have resulted from unimpaired competition by other manufacturers of prefabricated artificial teeth. Moreover, had other actual or potential prefabricated artificial teeth manufacturers not been substantially foreclosed or stifled by Dentsply's anti-competitive conduct from effectively competing in the market for such products, the other actual or potential competitors would have sold much more of their products and gained much larger market share, enabling them to achieve economies of scale and scope.  As these competitors increased their sales and achieved economies of scale, their costs would have fallen, and thus they would have been able to provide their products at even lower prices, further pressuring Dentsply to lower its prices in response.

38.    By unlawfully excluding and impairing competition, Dentsply's conduct has caused Plaintiff and the other Class members to pay more for

17

prefabricated artificial teeth than they otherwise would have paid absent Dentsply's illegal, exclusionary conduct.

## DAMAGES

39.   As a result of Dentsply's illegal conduct, members of the Class were compelled to pay, and did pay, artificially inflated prices for the prefabricated artificial teeth they purchased.  Had potential competitors been able to enter the market unimpeded by Defendant's illegal conduct (or been a threat to enter the market), and been able to achieve economies of scale, Plaintiff and other members of the Class would have been able to, *inter alia*, purchase less expensive prefabricated artificial teeth.  The prices that Plaintiff and the other Class members paid for prefabricated artificial teeth during the Class Period were substantially greater than the prices that Plaintiff and the Class members would have paid absent the illegal exclusionary conduct alleged herein because: (1) the prices of all prefabricated artificial teeth were artificially inflated by Dentsply's illegal conduct; and (2) Class members were deprived of the opportunity to purchase competing prefabricated artificial teeth, other than Dentsply's, and to purchase those competing products at substantially lower prices.  Members of the Class have, as a consequence, sustained substantial losses and damage to their business and property in the form of overcharges.  The full amount and components of such

18

damages will be calculated after discovery and upon proof at trial.

## STATUTE OF LIMITATIONS

40.    Pursuant to section 5(i) of the Clayton Act, 15 U.S.C. §16(i), the
running of the statute of limitations with respect to this private right of action
based upon matters complained of in  the United States' litigation against Dentsply
was tolled during the pendency of that litigation, and one year thereafter. The
United States' litigation began on January 5, 1999 and continued through April 26,
2006, thus tolling the statute of limitations (and defenses related to time) through
April 27, 2007.  On or around April 24, 2007, Plaintiff and Defendant Dentsply
entered into an agreement to further toll any statutes of limitation and defenses
related to time applicable "to any claim, cause of action, complaint, cross-claim,
petition, demand or other legal action or proceeding against Dentsply under
Sections 1 or 2 of the Sherman Act or Section 3 of the Clayton Act . . . arising out
of or related in any manner to the facts, or issues, or transactions raised or referred
to in . . . United States v. Dentsply Int'l, Inc., D. Del., Civil Action No. 99-005-
MMS."  Such tolling was in effect from April 1, 2007 through the filing of this
Complaint.

41.    Accordingly, pursuant to 15 U.S.C. §16(i) and the subsequent
agreement between Plaintiff and Dentsply, Plaintiff is entitled to seek recovery for

damages attributable to Dentsply's wrongful conduct beginning, at least, as of four years prior to the commencement of the government action, or January 5, 1995.

## CAUSE OF ACTION

### COUNT I
### Monopolization- Sherman Act §2

42.    Plaintiff incorporates by reference all of the foregoing allegations as though fully set forth at length.

43.    Dentsply willfully maintained and unlawfully exercised monopoly power in the relevant market.

44.    Dentsply's conduct in maintaining and extending its monopoly power in the relevant markets constitutes unlawful monopolization in violation of §2 of the Sherman Act. (15 U.S.C. §2).

45.    Dentsply acted willfully to maintain and exercise monopoly power in the relevant market through exclusionary, anti-competitive conduct set forth above, including, but not limited to, compelling independent dental supply dealers to refrain from adding lines of prefabricated artificial teeth made by competing manufacturers.

46.    There is no legitimate business justification for the actions and conduct through which Dentsply maintained its monopoly in the relevant market.

20

47.    Dentsply has effectively excluded competition from the relevant markets, maintained its dominant market share in the relevant markets, and profited from its anti-competitive conduct by excluding less expensive, superior competitive products, by maintaining prices at artificially high levels, and by reaping the benefits of its illegal obtained monopoly power.

48.    The anti-competitive effects of Dentsply's conduct far outweigh any conceivable procompetitive benefits or justifications.

49.    Plaintiff and members of the Class were injured in their business or property by Defendant's monopolization of the market for prefabricated artificial teeth.  Without limiting the generality of the foregoing, Plaintiff and the other members of the Class have been forced to pay higher prices for prefabricated artificial teeth than they would have paid in the absence of Defendant's unlawful conduct.

## **REQUEST FOR RELIEF**

WHEREFORE, Plaintiff, on behalf of itself and the Class, respectfully request that:

(i)    The Court determine that this action may be maintained as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure and direct that reasonable notice of this action, as provided by Rule 23, be given to the Class;

21

(ii)    The acts alleged herein be adjudged and decreed to be unlawful acts in violation of Section 2 of the Sherman Act;

(iii)    Each member of the Class recover three-fold the damages determined to have been sustained by each of them, and that judgment be entered against Defendant in favor of the Class; and

(iv)    The Class recover its costs of suit, including reasonable attorneys' fees and costs as provided by law.

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all issues so triable.

Dated: October 2, 2007                    Respectfully submitted,

                                                    /S/ Steven E. Grubb, Esquire_____
                                                    Steven E. Grubb, Esquire (PA75897)
                                                    GOLDBERG KATZMAN, P.C.
                                                    320 Market Street, Strawberry Square
                                                    P.O. Box 1268
                                                    Harrisburg, PA 17108
                                                    Tel:  (717) 234-4161
                                                    Fax: (717) 234-6808

GARWIN GERSTEIN & FISHER LLP        KAPLAN, FOX & KILSHEIMER, LLP
Bruce E. Gerstein                                   Linda Nussbaum
Noah Silverman                                      850 Third Avenue
Adam Steinfeld                                       New York, NY 10022
1501 Broadway, Suite 1416                   Tel: (212) 687-1980
New York, NY 10036                             Fax: (212)687-7714
Tel: (212) 398-0055
Fax: (212) 764-6620

22

ODOM & DES ROCHES, L.L.P.
John Gregory Odom
Stuart E. Des Roches
Suite 2020, Poydras Center
650 Poydras Street
New Orleans, LA 70130
Tel: (504) 522-0077
Fax: (504) 522-0078

PERCY, SMITH & FOOTE, L.L.P.
David P. Smith
W. Ross Foote
720 Murray Street
P.O. Box 1632
Alexandria, LA 71309
Tel: (318) 445-4480
Fax: (318) 487-1741

PHELPS DUNBAR, LLP
Brent B. Barrier
365 Canal Street, Suite 2000
New Orleans, LA 70130
Tel: (504) 566-1311
Fax: (504) 568-9130

KOZYAK TROPIN &
THROCKMORTON
Adam Moskowitz
2525 Ponce de Leon Blvd., 9th Floor
Miami, FL 33134
Tel: (305) 372-1800
Fax: (305) 372-3508
**Counsel for the Plaintiff,
Nowak Dental Supplies, Inc.**

®JS 44 (Rev 11/04)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court  This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet  (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM )

## I. (a)  PLAINTIFFS

Nowak Dental Supplies, Inc

**DEFENDANTS**

**(b)**  County of Residence of First Listed Plaintiff    Carriere, MS
(EXCEPT IN U S  PLAINTIFF CASES)

County of Residence of First Listed Defendant    York
(IN U S  PLAINTIFF CASES ONLY)
NOTE:  IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE
LAND INVOLVED

**(c)**  Attorney's (Firm Name, Address, and Telephone Number)

see attached

Attorneys (If Known)

## II. BASIS OF JURISDICTION    (Place an "X" in One Box Only)

☐ 1  U.S. Government
Plaintiff

☒ 3  Federal Question
(U S  Government Not a Party)

☐ 2  U.S. Government
Defendant

☐ 4  Diversity
(Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff
and One Box for Defendant)
(For Diversity Cases Only)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT    (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☒ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal | ☒ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | Med Malpractice | ☐ 625 Drug Related Seizure | 28 USC 157 | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | Liability | ☐ 365 Personal Injury - | of Property 21 USC 881 | | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & | Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 460 Deportation |
| & Enforcement of Judgment | Slander | ☐ 368 Asbestos Personal | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 470 Racketeer Influenced and |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' | Injury Product | ☐ 650 Airline Regs. | ☐ 830 Patent | Corrupt Organizations |
| ☐ 152 Recovery of Defaulted | Liability | Liability | ☐ 660 Occupational | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| Student Loans | ☐ 340 Marine | **PERSONAL PROPERTY** | Safety/Health | | ☐ 490 Cable/Sat TV |
| (Excl  Veterans) | ☐ 345 Marine Product | ☐ 370 Other Fraud | ☐ 690 Other | | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment | Liability | ☐ 371 Truth in Lending | **LABOR** | **SOCIAL SECURITY** | ☐ 850 Securities/Commodities/ |
| of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 380 Other Personal | ☐ 710 Fair Labor Standards | ☐ 861 HIA (1395ff) | Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle | Property Damage | Act | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge |
| ☐ 190 Other Contract | Product Liability | ☐ 385 Property Damage | ☐ 720 Labor/Mgmt  Relations | ☐ 863 DIWC/DIWW (405(g)) | 12 USC 3410 |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal | Product Liability | ☐ 730 Labor/Mgmt Reporting | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | Injury | | & Disclosure Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | **FEDERAL TAX SUITS** | ☐ 892 Economic Stabilization Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate | ☐ 790 Other Labor Litigation | ☐ 870 Taxes (U S  Plaintiff | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 442 Employment | Sentence | ☐ 791 Empl  Ret  Inc | or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ | Habeas Corpus: | Security Act | ☐ 871 IRS—Third Party | ☐ 895 Freedom of Information |
| ☐ 240 Torts to Land | Accommodations | ☐ 530 General | | 26 USC 7609 | Act |
| ☐ 245 Tort Product Liability | ☐ 444 Welfare | ☐ 535 Death Penalty | | | ☐ 900 Appeal of Fee Determination |
| ☐ 290 All Other Real Property | ☐ 445 Amer w/Disabilities - | ☐ 540 Mandamus & Other | | | Under Equal Access |
| | Employment | ☐ 550 Civil Rights | | | to Justice |
| | ☐ 446 Amer w/Disabilities - | ☐ 555 Prison Condition | | | ☐ 950 Constitutionality of |
| | Other | | | | State Statutes |
| | ☐ 440 Other Civil Rights | | | | |

## V. ORIGIN    (Place an "X" in One Box Only)

☒ 1 Original
Proceeding

☐ 2 Removed from
State Court

☐ 3 Remanded from
Appellate Court

☐ 4 Reinstated or
Reopened

☐ 5 Transferred from
another district
(specify)

☐ 6 Multidistrict
Litigation

☐ 7 Appeal to District
Judge from
Magistrate
Judgment

## VI. CAUSE OF ACTION

Cite the U S  Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
15 USC §15 - Clayton Act; 15 USC §2 - Sherman Act
Brief description of cause:
Anti-Competitive Conduct Regarding Artificial Teeth

## VII. REQUESTED IN COMPLAINT:

☒ CHECK IF THIS IS A CLASS ACTION
UNDER F.R.C.P. 23

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND:  ☒ Yes   ☐ No

## VIII. RELATED CASE(S) IF ANY

(See instructions:)

JUDGE

DOCKET NUMBER

DATE
10/30/07

SIGNATURE OF ATTORNEY OF RECORD

FOR OFFICE USE ONLY

RECEIPT # _____    AMOUNT _____    APPLYING IFP _____    JUDGE _____    MAG JUDGE _____

# CIVIL COVER SHEET

I(c).    **Counsel for the Plaintiff, Nowak Dental Supplies, Inc.**

GOLDBERG KATZMAN, P.C.
Steven E. Grubb, Esquire
320 Market Street, Strawberry Square
P.O. Box 1268
Harrisburg, PA 17108
Tel:  (717) 234-4161
Fax: (717) 234-6808

GARWIN GERSTEIN & FISHER LLP
Bruce E. Gerstein
Noah Silverman
Adam Steinfeld
1501 Broadway, Suite 1416
New York, NY 10036
Tel: (212) 398-0055
Fax: (212) 764-6620

KAPLAN, FOX & KILSHEIMER, LLP
Linda Nussbaum
850 Third Avenue
New York, NY 10022
Tel: (212) 687-1980
Fax: (212)687-7714

ODOM & DES ROCHES, L.L.P.
John Gregory Odom
Stuart E. Des Roches
Suite 2020, Poydras Center
650 Poydras Street
New Orleans, LA 70130
Tel: (504) 522-0077
Fax: (504) 522-0078

PHELPS DUNBAR, LLP
Brent B. Barrier
365 Canal Street, Suite 2000
New Orleans, LA  70130
Tel: (504) 566-1311
Fax: (504) 568-9130

PERCY, SMITH & FOOTE, L.L.P.
David P. Smith
W. Ross Foote
720 Murray Street
P.O. Box 1632
Alexandria, LA 71309
Tel: (318) 445-4480
Fax: (318) 487-1741

KOZYAK TROPIN &
THROCKMORTON
Adam Moskowitz
2525 Ponce de Leon Blvd., 9th Floor
Miami, FL 33134
Tel: (305) 372-1800
Fax: (305) 372-3508