# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| NOWAK DENTAL SUPPLIES, INC., | : | |
| | : | |
| Plaintiff, | : | |
| | : | No. 1:07-cv-01799 |
| vs. | : | |
| | : | |
| DENTSPLY INTERNATIONAL, INC., | : | (Judge Conner) |
| | : | |
| Defendant. | : | |

## REPLY BRIEF IN SUPPORT OF DENTSPLY INTERNATIONAL INC.'S MOTION TO TRANSFER VENUE

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................................ iii

PRELIMINARY STATEMENT ................................................................................................. 1

ARGUMENT ............................................................................................................................. 2

I.     NOWAK'S CHOICE OF FORUM IS INSUFFICIENT TO KEEP THIS ACTION
       IN THE MIDDLE DISTRICT OF PENNSYLVANIA ..................................................... 2

       A.     Nowak Overstates The Deference That This Court Should Give To Its
              Choice Of Forum ................................................................................................. 2

       B.     Nowak's Choice Of Forum Is Entitled To Even Less Deference Because
              Its Case Is A Class Action ................................................................................... 4

II.    JUDGE ROBINSON'S FAMILIARITY WITH THE *DENTSPLY* LITIGATION
       TILTS THE BALANCE IN FAVOR OF TRANSFER TO DELAWARE ......................... 4

III.   THE PENDENCY OF THE *UNIVAC* AND *LACTONA* CASES IN THIS COURT
       DOES NOT WEIGH AGAINST TRANSFER OF VENUE TO DELAWARE ................. 8

IV.    NOWAK DOES NOT DISPUTE THAT IT COULD HAVE FILED ITS
       COMPLAINT AGAINST DENTSPLY IN THE DISTRICT OF DELAWARE .............. 11

CONCLUSION ........................................................................................................................ 12

# TABLE OF AUTHORITIES

## CASES

*Ayling v. Travelers Prop. Cas. Corp.*,
    No. 99-3243, 1999 U.S. Dist. LEXIS 16716 (E.D. Pa. Oct. 27, 1999)............5, 7

*Bank of Am. N.A. (USA) v. US Airways, Inc.*,
    No. 05-793-JJF, 2005 U.S. Dist. LEXIS 34902 (D. Del. Dec. 21, 2005) ...........7

*Biovail Corp. Int'l v. Hoechst Aktiengesellschaft*,
    49 F. Supp. 2d 750 (D.N.J. 1999) ....................................................................... 8-9

*Hess v. Dentsply Int'l Inc.*,
    No. 99-255, 2008 U.S. Dist. LEXIS 1487 (D. Del. Jan. 8, 2008) .......................5

*Hess v. Dentsply Int'l Inc.*,
    516 F. Supp. 2d 324 (D. Del. 2007)...............................................................6, 11

*Hoffman v. Blaski*,
    363 U.S. 335 (1960)...........................................................................................11

*Illinois Brick Co. v. Illinois*,
    431 U.S. 720 (1977)...........................................................................................10

*KAB Enter. Co. v. Ursich Elec. Prods. Inc.*,
    No. 06-4361, 2007 U.S. Dist. LEXIS 27524 (E.D. Pa. Apr. 13, 2007) ........... 2-3

*Kedia v. Jamal*,
    Civ. No. 06-6054 (GEB), 2007 U.S. Dist. LEXIS 48474
    (D.N.J. July 5, 2007)...........................................................................................7

*Lawrence v. Xerox Corp.*,
    56 F. Supp. 2d 442 (D.N.J. 1999) ........................................................................4

*Panache Broad. of Pa., Inc. v. Richardson Elecs., Inc.*,
    No. 90-1358, 1990 WL 145419 (E.D. Pa. Sept. 28, 1990)...................................4

*Pennwalt Corp. v. Purex Indus., Inc.*,
    659 F. Supp. 287 (D. Del. 1986).........................................................................3

*Samsung Electronics Co., Ltd. v. Rambus, Inc.*,
  386 F. Supp. 2d 708 (E.D. Va. 2005) .............................................................. 7-8

*Shan Sparshott v. Feld Entm't*,
  89 F. Supp. 2d 1 (D.D.C. 2000) ...........................................................................3

*Shutte v. Armco Steel Corp.*,
  431 F.2d 22 (3d Cir. 1970) ...................................................................................3

*Simmens v. Coca Cola Co.*,
  No. 07-668, 2007 WL 2007977 (E.D. Pa. July 5, 2007) .....................................4

*Tischio v. Bontex, Inc.*,
  16 F. Supp. 2d 511 (D.N.J. 1998) .........................................................................3

## STATUTE

28 U.S.C. § 1404(a) (2007)................................................................................passim

## PRELIMINARY STATEMENT

Nowak attempts to rebut the obvious benefits of transfer of venue to Delaware on three grounds. Not one of these bases, however, is sufficient to refute Dentsply's showing that the District of Delaware is, on balance, the best forum to litigate the Nowak case.

First, Nowak contends transfer is inappropriate because it affirmatively chose to file suit in Dentsply's home district. But Nowak's choice of forum is entitled to considerably less weight here because it has no connection to Pennsylvania, Dentsply's complained-of-conduct allegedly affected consumers of artificial teeth nationwide, and it is pursuing a putative class action on behalf of these consumers.

Second, Nowak wrongly portrays Judge Robinson's long history with the Dentsply litigation as meaningless under Section 1404(a). It concedes, however, that Judge Robinson has presided over related Dentsply cases for almost eight years. During that time she has adjudicated the very claims that Nowak makes in its Complaint and that it discusses in its opposition brief. Thus, even if Dentsply must make a "compelling showing" to overcome Nowak's choice of forum, it has done so here.

Lastly, Nowak argues that litigation efficiencies favor keeping its case in this Court because it shares "common issues" with the *Lactona* and *Univac* cases. Those cases, however, are distinctly different from *Nowak* because they are competitor cases. Thus, Univac and Lactona must demonstrate in the first instance that Dentsply's Dealer Criterion 6 excluded them from the relevant market to prevail on their damages claims. By contrast, Nowak must demonstrate that it paid supracompetitive prices for artificial teeth as a result of Dealer Criterion 6. Hess makes this precise claim in its case against Dentsply. The retail price-fixing claim that remains in *Jersey* also focuses on the prices of Dentsply's artificial teeth. Given the obvious similarities between *Nowak* and the *Hess* and *Jersey* purchaser cases, the *Nowak* case belongs in Delaware before Judge Robinson.

Accordingly, this Court should transfer venue of this action to the District of Delaware.

## ARGUMENT

## I.   NOWAK'S CHOICE OF FORUM IS INSUFFICIENT TO KEEP THIS ACTION IN THE MIDDLE DISTRICT OF PENNSYLVANIA

### A.   Nowak Overstates The Deference That This Court Should Give To Its Choice Of Forum

Nowak ignores well-settled law that a plaintiff's choice of forum is entitled to less weight where, as here, "a plaintiff chooses a forum other than his state of residence or the situs of the occurrence upon which the suit is based." (Br. at 17

2

(quoting *KAB Enter. Co. v. Ursich Elec. Prods. Inc.*, No. 06-4361, 2007 U.S. Dist. LEXIS 27524, at *5 (E.D. Pa. Apr. 13, 2007))).  For this reason alone, this Court should give little deference to Nowak's choice of forum.  *Tischio v. Bontex, Inc.*, 16 F. Supp. 2d 511, 521 (D.N.J. 1998) (holding that a plaintiff's choice of forum "is simply a preference; it is not a right" and that deference to that choice "is curbed [] where the plaintiff has not chosen his or her home forum"); *Pennwalt Corp. v. Purex Indus., Inc.*, 659 F. Supp. 287, 289 (D. Del. 1986) ("A defendant's burden with respect to plaintiff's choice of forum is easier to meet where the plaintiff has not brought suit in its 'home turf.'").

Nowak relies principally on *Shutte v. Armco Steel Corp.*, 431 F.2d 22 (3d Cir. 1970), for the proposition that a plaintiff's choice of forum should prevail unless the moving party can show that litigating the case in the plaintiff's choice of forum is inconvenient.  (Opp. at 12).  But in *Shutte*, the plaintiff and her decedent *were* residents of Western Pennsylvania, the transferor court.  *Shutte*, 431 F.2d at 25.  The Third Circuit issued a writ of mandamus in light of this "plain fact" that directed the district court judge to set aside his transfer order.  *Id*.  Nowak also relies on the five-sentence opinion in *Shan Sparshott v. Feld Entertainment*.  (Opp. at 11 (citing *Shan Sparshott v. Feld Entm't*, 89 F. Supp. 2d 1, 4 (D.D.C. 2000))). In that case, however, Judge Robertson denied transfer to the Eastern District of Virginia because the factors bearing on the convenience of the witnesses and the

interests of justice were "in equipoise." Here, both factors tip decidedly in favor of transfer to Delaware.

**B.    Nowak's Choice Of Forum Is Entitled To Even Less Deference Because Its Case Is A Class Action**

This Court should give even less deference to Nowak's choice of forum because it brought its case as a putative class action. *Simmens v. Coca Cola Co.*, No. 07-668, 2007 WL 2007977, at *3 (E.D. Pa. July 5, 2007) (giving no deference to plaintiff's choice of forum where plaintiff purported to represent a nationwide class); *Lawrence v. Xerox Corp.*, 56 F. Supp. 2d 442, 453 n.7 (D.N.J. 1999) (giving less deference to plaintiffs' choice of forum *even though plaintiffs filed in their "home district"* where plaintiffs sought to represent a class of plaintiffs located throughout the United States); *Panache Broad. of Pa., Inc. v. Richardson Elecs., Inc.*, No. 90-1358, 1990 WL 145419, at *2 (E.D. Pa. Sept. 28, 1990).

For these reasons, Nowak's choice of forum does not weigh against transfer to Delaware.

**II.    JUDGE ROBINSON'S FAMILIARITY WITH THE *DENTSPLY* LITIGATION TILTS THE BALANCE IN FAVOR OF TRANSFER TO DELAWARE**

Even if, as Nowak suggests, Dentsply must make a "compelling showing" to overcome Nowak's choice of venue, it has done so here because Judge Robinson has presided over litigation against Dentsply since May 2000 and has adjudicated

issues that are relevant to this case. *Ayling v. Travelers Prop. Cas. Corp.*, No. 99-3243, 1999 U.S. Dist. LEXIS 16716, at *14 n.4 (E.D. Pa. Oct. 27, 1999). Nowak makes a number of futile attempts to diminish the obvious relevance and utility of Judge Robinson's experience. Not one of these arguments, however, is sufficient to rebut Dentsply's showing that Judge Robinson's vast experience with the *Dentsply* litigation tilts the balance in favor of transfer.

First, Nowak erroneously contends that Judge Robinson currently presides over one action, the *Hess* action, and that this case is "near its conclusion." (Opp. at 2-3). But this depiction of the cases before Judge Robinson is simply not true. Judge Robinson presides over the *Hess* and *Jersey* actions. (Opp. at 3-6). On January 8, 2008, Judge Robinson denied the Hess plaintiffs' motion to supplement the record with evidence that the plaintiffs believe shows that Dealer Criterion 6 resulted in higher prices. *Hess v. Dentsply Int'l Inc.*, No. 99-255, 2008 U.S. Dist. LEXIS 1487, at *16 (D. Del. Jan. 8, 2008). In the same Order, she granted the Jersey plaintiffs' motion for Rule 54(b) certification of the dismissal of their Section 2 claims. *Id.* The Hess and Jersey plaintiffs intend to appeal both rulings to the Third Circuit, which may very well send the cases back down to Judge Robinson.

Second, Nowak argues that "Dentsply's entire argument is based on the proposition that the existence of *Hess* so substantially outweighs all other relevant considerations that transfer is appropriate." (Opp. at 11). This characterization is also untrue. Judge Robinson has actually decided the facts and legal issues involved in this lawsuit in the government's litigation against Dentsply, in *Hess v. Dentsply*, and in *Jersey v. Dentsply*. (Br. at 13-14). Her seven years of experience on all of these cases make the District of Delaware the ideal forum for this case.

Third, Nowak argues that Judge Robinson's opinion regarding the potential preclusive effects of the Third Circuit's findings is not "particularly relevant" to its claims because, unlike the laboratory plaintiffs in the *Hess* action, Nowak is a direct-purchasing dealer. (Opp. at 2-3, 19-20). Judge Robinson held, however, that "[t]he relevant market for Dentsply's teeth, as defined by the Third Circuit, consists of two consumers combined: *the dental dealers* and the dental laboratories." *Hess v. Dentsply Int'l Inc.*, 516 F. Supp. 2d 324, 334 (D. Del. 2007) (emphasis added). She declined to infer that both sets of "**consumers** . . . have been hurt" based on a finding of anticompetitive effects. *Id.* (emphasis added and internal quotations omitted). Her opinion thus clearly demonstrates that it is applicable to dealers and laboratories alike.

Predictably, Nowak mischaracterizes *Ayling* and several other cases that hold unequivocally that the presence of a judicial officer in the transferee court who has presided over related cases "is powerful enough to tilt the balance in favor of transfer even when the convenience of the parties and witnesses would point to a denial." *Id.* at *13-14.   In *Ayling*, the court transferred the case because the transferee judge, like Judge Robinson, was "already familiar with the factual and legal issues" of plaintiffs' allegations. *Id.* at *14.  Similarly, in *Bank of America*, the court transferred the action because the transferee judge was familiar with the nature of the claims and the correct interpretation of his own orders, and thus was "well positioned to quickly and efficiently resolve these and other issues." *Bank of Am. N.A. (USA) v. US Airways, Inc.*, No. 05-793-JJF, 2005 U.S. Dist. LEXIS 34902, at *8-9 (D. Del. Dec. 21, 2005).  The same is true here.

The *Samsung* case that Nowak cites demonstrates this precise point.[1]  In *Samsung Electronics Co., Ltd. v. Rambus, Inc.*, 386 F. Supp. 2d 708 (E.D. Va. 2005), the court denied defendant's motion to transfer the case to Northern California, where the defendant was engaged in related litigation. *Id.* at 722.  But unlike the transferee court, the *Samsung* court had already presided over two trials

---

[1] Nowak's reliance on *Kedia v. Jamal*, Civ. No. 06-6054 (GEB), 2007 U.S. Dist. LEXIS 48474 (D.N.J. July 5, 2007), is entirely misplaced.  In *Kedia*, defendants moved for reconsideration of the court's order on a motion to dismiss and a motion to transfer venue "pursuant to the first-filed rule."  *Id.* at *1.  Defendants had not requested transfer pursuant to Section 1404(a).  *Id.* at *11.

involving the same four patents at issue.  *Id.*  The reason why the court did not transfer the case to California was because it had expended *more* resources and become *more* familiar with the issues than the transferee court.  That situation does not exist here.  The *Samsung* court rightly held that "judicial economy and the interest of justice favor a venue which has already committed judicial resources to the contested issues and is familiar with the facts of the case."  *Id*. at 722 (internal citations omitted).  For this very reason, the District of Delaware is the best forum to litigate the Nowak case.

## III. THE PENDENCY OF THE *UNIVAC* AND *LACTONA* CASES IN THIS COURT DOES NOT WEIGH AGAINST TRANSFER OF VENUE TO DELAWARE

Nowak goes to great lengths to tie itself to the *Univac* and *Lactona* competitor cases that are pending in this Court in an effort to avoid transfer.  But the reality is that Nowak's case is factually and legally distinct from those cases, and similar to the *Hess* and *Jersey* purchaser cases.  *Nowak* thus belongs in Delaware in front of Judge Robinson.

Nowak argues that the *Univac*, *Lactona* and *Nowak* actions will "requir[e] this Court to consider precisely the same factual and legal issues in each case." (Opp. at 2).  Again, this is not true.  To prevail on their Section 2 claims, plaintiffs Univac and Lactona must show that Dentsply's conduct excluded them from the marketplace and caused them to lose sales.  *Biovail Corp. Int'l v. Hoechst*

*Aktiengesellschaft*, 49 F. Supp. 2d 750, 772 (D.N.J. 1999) (finding that a plaintiff pharmaceutical company properly stated a claim for relief under Section 2 by alleging that defendant manufacturers foreclosed plaintiff from the market for sustained release diltazem products and the submarket for generic versions).

Univac and Lactona have already informed this Court that the issue of foreclosure is at the heart of their cases against Dentsply. Univac asserts in its statement of the case that Dentsply's conduct "caused damage to plaintiff by reducing the sales of plaintiff's artificial teeth to dental dealers, causing plaintiff increased costs to try to counter the actions of defendant and causing diminution of the value of the business sold by plaintiff in 2001." (*Univac*, Dkt. No. 17 at 2). Lactona's statement of the case contains nearly identical language. (*Lactona*, Dkt. No. 15 at 2). Thus, if Dentsply does not prevail on its pending motion to dismiss these cases on statute of limitations grounds, the parties will explore in discovery whether Univac and Lactona were able to sell artificial teeth to consumers during the relevant time period.

By contrast, Nowak, as a purchaser, has made clear that it intends to demonstrate injury under Section 2 by showing that it paid supracompetitive prices for Dentsply's artificial teeth. (Nowak's statement of the case, Dkt No. 21 at 2) (stating that "[a]s a result of Dentsply's unlawful conduct, Plaintiff and other

dental supply dealers have paid overcharges on their purchases of artificial teeth"). Thus, the central issue in this case is what effect, if any, Dealer Criterion 6 had on the prices that the plaintiff dealers paid for Dentsply's artificial teeth. This significant difference between the two sets of cases belies Nowak's contention that it would be inefficient to transfer only *Nowak* to Delaware.

Try as it might to show otherwise, Nowak's case shares common issues with the *Hess* and *Jersey* purchaser cases and thus should proceed in Delaware. Both Nowak and Hess make the same primary claim: that Dealer Criterion 6 caused them to pay higher prices for artificial teeth than they otherwise would have paid in the absence of the policy.[2] In *Jersey*, plaintiffs allege that Dentsply and its dealers engaged in a retail price-fixing conspiracy. Clearly, the central focus of discovery in that case will be Dentsply's pricing of its artificial teeth and, therefore, will involve much of the same evidence that will be at issue in this case and in *Hess*. In addition, all three cases are putative class actions. Finally, a majority of the absent class members in this case are still engaged in the *Jersey* litigation. All of

---

[2] Curiously, Nowak looks to *Illinois Brick Co. v. Illinois*, 431 U.S. 720 (1977), for support that its case is "factually and legally distinct" from *Hess*. (Opp. at 2, 16). It is certainly true that, unlike the indirect purchaser plaintiffs in *Hess* and *Jersey*, Nowak is entitled to seek money damages against Dentsply under Section 4 of the Clayton Act. But the nature of the different remedy that Nowak seeks does not change the fact that it is making the same legal claim as Hess.

these similarities demonstrate that it would be more efficient and more convenient to litigate this case in Delaware.

## IV.    NOWAK DOES NOT DISPUTE THAT IT COULD HAVE FILED ITS COMPLAINT AGAINST DENTSPLY IN THE DISTRICT OF DELAWARE

Notably, Nowak does not dispute that it could have filed its action against Dentsply in Delaware.  Rather, it touts the fact that Judge Robinson dismissed Nowak from the *Jersey* case for lack of personal jurisdiction and improper venue. (Opp. at 9-10).  But in that case, Nowak was one of several *defendants* whose national contacts did not suffice to render venue appropriate in the District of Delaware pursuant to Section 12 of the Clayton Act.  *Hess*, 516 F. Supp. 2d at 338-39.  Nowak's dismissal in *Jersey* as a *defendant* is entirely irrelevant under § 1404, which permits transfer to any court where the *plaintiff* could have brought the action.  The sole consideration under § 1404(a) is whether jurisdiction and venue are proper over the defendant, not the plaintiff.  *Hoffman v. Blaski*, 363 U.S. 335, 343-44 (1960).

## CONCLUSION

For the foregoing reasons, Dentsply respectfully requests that the Court transfer this case to the District of Delaware.

Dated: January 28, 2008                    Respectfully submitted,

                                           /s/ Harvey Freedenberg
Of Counsel:                                Harvey Freedenberg
                                           McNEES WALLACE & NURICK LLC
Brian M. Addison                           100 Pine Street
DENTSPLY INTERNATIONAL INC.                Harrisburg, PA 17101
Susquehanna Commerce Center                (717) 237-5267
221 W. Philadelphia Street
York, PA 17405-0872                        Margaret M. Zwisler
(717) 849-4363                             Eric J. McCarthy
                                           Charles R. Price
                                           LATHAM & WATKINS LLP
                                           555  Eleventh Street, NW
                                           Suite 1000
                                           Washington, DC 20004
                                           Telephone: (202) 637-2200
                                           Facsimile: (202) 637-2201

                                           Attorneys for Defendant,
                                           DENTSPLY INTERNATIONAL INC.

## <u>CERTIFICATE OF COMPLIANCE PURSUANT</u>
## <u>TO LOCAL RULE 7.8(b)(2)</u>

Pursuant to Local Rule 7.8(b)(2), it is hereby certified that the forgoing *Reply Brief In Support Of Dentsply International Inc.'s Motion To Transfer Venue* contains 2,521 words (exclusive of the title page, table of contents, table of authorities, this certificate, certificate of non-compliance, and certificate of service), according to the Microsoft® Word 2003 word processing system used to prepare it, and that the memorandum therefore complies with the type-volume limitations of Local Rule 7.8(b)(2).

/s/ Harvey Freedenberg

Harvey Freedenberg

Dated: January 28, 2008

# <u>CERTIFICATE OF SERVICE</u>

It is hereby certified that a copy of the foregoing document was served this 28th day of January 2008 via electronic means upon counsel via the ECF filing system.

/s/ Harvey Freedenberg

Harvey Freedenberg

Of Counsel for Defendant

## ATTACHMENT – UNREPORTED DECISIONS

*Ayling v. Travelers Prop. Cas. Corp.*,
    No. 99-3243, 1999 U.S. Dist. LEXIS 16716 (E.D. Pa. Oct. 27, 1999)

*Bank of Am. N.A. (USA) v. US Airways, Inc.*,
    No. 05-793-JJF, 2005 U.S. Dist. LEXIS 34902 (D. Del. Dec. 21, 2005)

*Hess v. Dentsply Int'l Inc.*,
    No. 99-255, 2008 U.S. Dist. LEXIS 1487 (D. Del. Jan. 8, 2008)

*KAB Enter. Co. v. Ursich Elec. Prods. Inc.*,
    No. 06-4361, 2007 U.S. Dist. LEXIS 27524 (E.D. Pa. Apr. 13, 2007)

*Kedia v. Jamal*,
    Civ. No. 06-6054 (GEB), 2007 U.S. Dist. LEXIS 48474 (D.N.J. July 5, 2007)

*Panache Broad. of Pa., Inc. v. Richardson Elecs., Inc.*,
    No. 90-1358, 1990 WL 145419 (E.D. Pa. Sept. 28, 1990)

*Simmens v. Coca Cola Co.*,
    No. 07-668, 2007 WL 2007977 (E.D. Pa. July 5, 2007)

LEXSEE 1999 U.S. DIST. LEXIS 16716



Caution
As of: Jan 28, 2008

**THERESA AYLING, on behalf of herself, and all others similarly situated, Plaintiff, v. TRAVELERS PROPERTY CASUALTY CORP.; TRAVELERS GROUP INC.; TRAVELERS LIFE AND ANNUITY COMPANY, TOWER SQUARE SECURITIES, INC.; SALOMON SMITH BARNEY HOLDINGS, INC.; RINGLER ASSOCIATES, INC.; WELLS AND ASSOCIATES, INC.; UNIDENTIFIED BROKERS 1 THROUGH 99, Defendants.**

CIVIL ACTION NO. 99-3243

UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA

*1999 U.S. Dist. LEXIS 16716*

**October 27, 1999, Decided**

**DISPOSITION:** [*1] Defendants' Motion to Transfer Venue to the District of Connecticut GRANTED and case Transferred to the District of Connecticut.

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Principal defendant, property and casualty insurance company, moved to transfer venue pursuant to *28 U.S.C.S. § 1404(a)* to the District of Connecticut and to enlarge time to respond to a proposed class action suit brought by consumer plaintiff who alleged fraud and RICO violations in defendant's structured settlement annuities.

**OVERVIEW:** Principal defendant, property and casualty insurance company, moved to transfer venue pursuant to *28 U.S.C.S. § 1404(a)* to the District of Connecticut and to enlarge time to respond to a proposed class action suit brought by consumer plaintiff in her home state of Pennsylvania. She alleged defendant committed fraud and negligent misrepresentation, and violated the Pennsylvania Unfair Insurance Practices Act, Unfair Trade Practices Act, and Racketeer Influenced and Corrupt Organizations Act, *18 U.S.C.S. § 1961 et seq.*, by receiving rebates on commissions from brokers in the course of issuing structured settlement annuities for putative plaintiffs. The court found that, although plaintiff was a paraplegic for whom travel was difficult, the de-

fendants demonstrated that Connecticut was a more appropriate forum, because similar litigation was already filed there before a judge familiar with many of the issues, and the convenience of witnesses, location of documents, and similarity of statutes favored transfer.

**OUTCOME:** Defendant insurance company's motion to transfer venue was granted; the only factor against transfer was that named plaintiff was a paraplegic Pennsylvania resident; Transferee state Connecticut was defendant's principal place of business, was where most transactions were completed, and similar litigation was pending there; transferee court would decide other motions.

**LexisNexis(R) Headnotes**

*Civil Procedure > Venue > Federal Venue Transfers > Convenience Transfers*
[HN1] A district court may transfer the venue of any civil action for the convenience of parties and witnesses or in the interests of justice, to any other district where it might have been brought. *28 U.S.C.S. § 1404(a).*

*Civil Procedure > Venue > Federal Venue Transfers > General Overview*

1999 U.S. Dist. LEXIS 16716, *

[HN2] Although *28 U.S.C.S. § 1404(a)* gives a district court the discretion to decide a motion based on an individualized case by case basis, consideration of convenience and fairness, such motions are not to be liberally granted.

*Civil Procedure > Venue > Federal Venue Transfers > Convenience Transfers*
[HN3] In ruling on a motion to transfer under *28 U.S.C.S. § 1404(a)*, the Court should consider all relevant factors to determine whether on balance the litigation would more conveniently proceed and the interests of justice be better served by transfer to a different forum.

*Civil Procedure > Venue > Federal Venue Transfers > Convenience Transfers*
*Civil Procedure > Venue > Motions to Transfer > Interests of Justice*
[HN4] The first step in a court's analysis of a transfer motion under *28 U.S.C.S. § 1404(a)* is to determine whether venue would be proper in the transferee district. If the first prong of the inquiry is satisfied, the court then should determine whether a transfer would be in the interests of justice.

*Civil Procedure > Venue > Federal Venue Transfers > General Overview*
[HN5] The party moving to transfer a case on grounds of inconvenience has the burden of showing that the existing forum is inconvenient.

*Civil Procedure > Jurisdiction > Subject Matter Jurisdiction > Jurisdiction Over Actions > General Overview*
*Civil Procedure > Venue > Individual Defendants*
[HN6] Any civil action wherein jurisdiction is not founded solely on the diversity of citizenship may be brought in a district in which a substantial part of the events or omissions giving rise to the claim occurred. *28 U.S.C.S. § 1391(b)(2)*.

*Civil Procedure > Venue > Federal Venue Transfers > General Overview*
*Civil Procedure > Venue > Motions to Transfer > Choice of Forum*
[HN7] After determining that a transferee forum is one where the action could originally have been brought, the second part of the transfer analysis requires a balancing of the interests of justice and the convenience of witnesses and parties. Factors to be considered in determin-

ing whether to transfer venue include (1) the convenience and preference of the parties, including the plaintiff's choice of forum, (2) the convenience of witnesses, (3) access to sources of proof such as books and records, (4) practical considerations that make litigation easy, expeditious or inexpensive, (5) the relative calendar congestion of the two competing districts, (6) where the events at issue took place and the interest of the respective courts in deciding local controversies (7) the enforceability of any judgment and (8) the familiarity of the trial judge with the applicable law.

*Civil Procedure > Venue > Federal Venue Transfers > General Overview*
[HN8] A plaintiff's choice of forum is a paramount consideration that should not lightly be disturbed.

*Civil Procedure > Venue > Federal Venue Transfers > General Overview*
[HN9] Unless the balance of convenience of the parties is strongly in favor of defendant, the plaintiff's choice of forum should prevail.

*Civil Procedure > Venue > Federal Venue Transfers > General Overview*
[HN10] When considering a motion to transfer, a court may consider the convenience of the parties as indicated by their relative physical and financial condition.

*Civil Procedure > Venue > Federal Venue Transfers > General Overview*
[HN11] The courts have found that the presence of related cases in the transferee forum is a reason to grant a transfer. This consideration is powerful enough to tilt the balance in favor of a transfer even when the convenience of the parties and witnesses would point to a denial.

*Civil Procedure > Venue > Federal Venue Transfers > General Overview*
[HN12] Although courts may consider calendar congestion in ruling upon a *28 U.S.C.S § 1404(a)* motion, the relative congestion of the respective courts dockets is not a factor of great importance in this type of motion.

*Civil Procedure > Venue > Federal Venue Transfers > General Overview*
*Governments > Local Governments > Claims By & Against*

[HN13] Where plaintiff's cause of action arises from strategic policy decisions of a defendant corporation, the defendant's headquarters can be considered the place where events giving rise to the claim occurred.

**COUNSEL:** For THERESA AYLING, PLAINTIFF: JOHN JOSEPH GALLAGHER, PHILADELPHIA, PA USA. LAURENCE S. BERMAN, LEVIN, FISHBEIN, SEDRAN & BERMAN, PHILADELPHIA, PA USA.

For TRAVELERS PROPERTY CASUALTY CORP., TRAVELERS GROUP INC., TRAVELERS LIFE AND ANNUITY COMPANY, DEFENDANTS: JOHN CHESNEY, MARY E. KOHART, DRINKER BIDDLE & REATH LLP, PHILADELPHIA, PA USA.

For TOWER SQUARE SECURITIES, INC., SALOMON SMITH BARNEY HOLDINGS, INC., DEFENDANTS: MARY E. KOHART, DRINKER BIDDLE & REATH LLP, PHILADELPHIA, PA USA.

For RINGLER ASSOCIATES, INC., MICHAEL J. DUNN, MURPHY & O'CONNOR, PHILADELPHIA, PA USA.

For WELLS AND ASSOCIATES, DEFENDANT: JOSEPH M. HANKINS, BRITT, HANKINS, SCHAIBLE & MOUGHAN, PHILA, PA USA. C. SCOTT CRABTREE, DENVER, CO USA.

**JUDGES:** RONALD L. BUCKWALTER, J.

**OPINION BY:** RONALD L. BUCKWALTER

**OPINION**

    **MEMORANDUM & ORDER**

    BUCKWALTER, J.

October 27, 1999

Presently before the Court is the Travelers Defendants [1] Motion to Transfer Venue pursuant to *28 U.S.C. § 1404(a)* and to Enlarge Defendants' Time to Respond. For the reasons [*2] stated below, the Motion is Granted as to the Transfer. The Motion to Enlarge the Time to Respond will be decided by the Transferee Court.

    1  The Travelers Defendants who made this motion include Travelers Property Casualty Corp. ("TPC"), Travelers Group, Inc. ("Travelers"), Travelers Life and Annuity Company ("TLAC"), Tower Square Securities, Inc. ("Tower"), and Salomon Smith Barney Holdings, Inc. ("Smith Barney"). Ringler Associates, Inc. ("Ringler") has

requested that it be joined in the Motion of the Travelers' Defendants.

**I. Factual Background**

This action has been brought on behalf of a class of persons who entered into structured settlement agreements with TPC and allegedly were subsequently defrauded as a result of Defendants' elaborate rebating scheme. Structured settlements involve a defendant's promise to make a specified number of future periodic payments in lieu of a single lump sum payment. They are often used as a means of resolving personal injury lawsuits. A single premium settlement [*3] annuity is then purchased by the insurer naming the settling plaintiff as beneficiary.

Plaintiff asserts that the Travelers Defendants have undertaken to defraud persons entering into structured settlements with TPC by misrepresenting the cost of annuities, and in so doing, have taken advantage of class members. The basic scheme of the alleged fraud is that TPC would first enter into exclusive contracts for the purchase of the structured settlement annuities with the various securities companies. In exchange for these exclusive contracts, TPC would then agree to rebate a percentage of the commissions (50-75%) they were to receive from the purchase of the annuities. TPC would then show the settling plaintiff the amount that the annuity had cost, while including the full commission price. [2] The settling plaintiff would never know the true cost of the annuity. The Plaintiffs allege that this business practice was fraudulent, in violation of both federal and state law.

    2  For example, TPC would report to the settling plaintiff that the annuity would be funded with a hypothetical $ 104,000. That would include the $ 100,000 principal and $ 4,000 commission. Then the broker would return $ 2,000 of the commission, so that the annuity really cost TPC only $ 102,000. Plaintiff alleges that this practice led to the settling plaintiffs receiving less than the amount to which they were entitled.

[*4]  Plaintiff brings this action pursuant to the "RICO" statute, *18 U.S.C. § 1961 et seq.*. Plaintiff also asserts claims under Pennsylvania common law, sounding in fraud and negligent misrepresentation, as well as violations of the Pennsylvania Unfair Insurance Practices Act and Unfair Trade Practices Act.

The Travelers Defendants ask the Court to transfer this case to the District of Connecticut pursuant to *28 U.S.C. § 1404(a)*. They raise three major reasons as to why such a transfer would be in the interests of justice. First, a case alleging the same violations by the same

defendants on behalf of the same class is currently before a judge in the District of Connecticut. [3] Secondly, the majority of witnesses and documents needed for this case are located in the vicinity of Hartford in that state, which serves as the headquarters of TPC. Finally, Defendants assert that Connecticut is where the alleged violations arose.

> 3  Abdullah v. Traveler Property Cas. Corp., No. 399-CV-0155, filed on January 27, 1999 (currently pending before Judge Warren Eginton of the District of Connecticut.). Two other cases involving very similar claims, defendants and class members, Macomber v. Travelers Property Cas. Co., No. 398-CV-1060, filed June 5, 1998, and Huaman v. Travelers Property Cas. Co., No. 398-CV-1093, June 10, 1998, were dismissed by Judge Eginton on March 30, 1999.

[*5] **II. Legal Standard**

[HN1] A district court may transfer the venue of any civil action for the convenience of parties and witnesses or in the interests of justice, to any other district where it might have been brought. *28 U.S.C. § 1404(a)*. The purpose of this section is "to prevent the waste of 'time, energy and money' and 'to protect litigants, witnesses and the public against unnecessary inconvenience and expense'" *Van Dusen v. Barrack, 376 U.S. 612, 616, 11 L. Ed. 2d 945, 84 S. Ct. 805 (1964)* (*quoting* [HN2] *Continental Grain Co. v. Barge FBL-585, 364 U.S. 19, 26-27, 80 S. Ct. 1470, 4 L. Ed. 2d 1540 (1960))*. Although *§ 1404(a)* gives a district court the discretion to decide a motion based on a individualized case by case basis consideration of convenience and fairness, such motions are not to be liberally granted. [HN3] *Stewart Organization, Inc. v. Ricoh Corp., 487 U.S. 22, 29, 101 L. Ed. 2d 22, 108 S. Ct. 2239 (1987)*.

In ruling on a motion to transfer, the Court should consider "all relevant factors to determine whether on balance the litigation would more conveniently proceed and the interests of justice be better served by transfer to a [*6] different forum. See, [HN4] *Jumara v. State Farm Ins. Co., 55 F.3d 873, 879 (3d Cir. 1995)*. The first step in a court's analysis of a transfer motion is to determine whether venue would be proper in the transferee district. If the first prong of the inquiry is satisfied, the court then should determine whether a transfer would be in the interests of justice. [HN5] *Id. at 879*. It is important to note that the party moving to transfer a case on grounds of inconvenience has the burden of showing that the existing forum is inconvenient. *Britamco Underwriters v. Raymond E. Wallace Productions, Inc., 56 F. Supp. 2d 542, 545 (E.D. Pa. 1999)* (Joyner, J.).

**III. Discussion**

**A. Could the action have been brought in Connecticut?**

[HN6] Any civil action wherein jurisdiction is not found solely on the diversity of citizenship may be brought in a district in which a substantial part of the events or omissions giving rise to the claim occurred. *28 U.S.C. § 1391(b)(2)*. Likewise, as Plaintiffs assert a RICO violation, venue would be proper in any district in which such person resides. See, *18 U.S.C. 1965* [*7] *(a)*. Since TPC (the primary defendant) resides in Connecticut, and the alleged 'kickbacks' were paid to TPC in Hartford, the action could have been brought in the District of Connecticut.

**B. Would a transfer to Connecticut be in the interests of justice and for the convenience of witnesses and parties?**

[HN7] The second part of the transfer analysis requires a balancing of the interests of justice and the convenience of witnesses and parties. Factors to be considered in determining whether to transfer venue include (1) the convenience and preference of the parties, including the plaintiff's choice of forum, (2) the convenience of witnesses, (3) access to sources of proof such as books and records, (4) practical considerations that make litigation easy, expeditious or inexpensive, (5) the relative calendar congestion of the two competing districts, (6) where the events at issue took place and the interest of the respective courts in deciding local controversies (7) the enforceability of any judgment and (8) the familiarity of the trial judge with the applicable law. See, *Jumara, 55 F.3d at 879-880*. These factors will be discussed in turn.

1. Convenience [*8] of Parties and Plaintiff's Choice of Forum:

The [HN8] plaintiff's choice of forum is a paramount consideration that should not lightly be disturbed. See, *First Union National Bank v. United States, 55 F. Supp. 2d 331, 332 (E.D. Pa. 1999)* (*quoting Sovereign Bank, F.S.B. v. Rochester Community Savings Bank, 907 F. Supp. 123, 126 (E.D. Pa. 1995)*) (denying motion to transfer even though plaintiff filed in a district which was not his home nor the situs of events in contention). Moreover, [HN9] unless the balance of convenience of the parties is strongly in favor of defendant, the plaintiff's choice of forum should prevail. See, [HN10] *Shutte v. Armco Steel Corp., 431 F.2d 22, 25 (3d Cir. 1970)*. When considering a motion to transfer, a court may consider the "convenience of the parties as indicated by their relative physical and financial condition." *Jumara, 55 F.3d at 879*.

In this case, the named Plaintiff's physical and financial condition are much more limiting than are those of the Travelers Defendants. The named Plaintiff in this putative class action is a 20 year old paraplegic. The Defendants are a group of corporations [*9] worth billions of dollars. The mere fact that the Travelers Defendants have more resources than Plaintiff should not be the sole reason for refusing a transfer, but an assessment of relative inconvenience weighs in her favor. See, *National Mortgage Network, Inc. v. Home Equity Centers, Inc., 683 F. Supp. 116, 119 (E.D. Pa. 1988).* Three of the five Travelers Defendants, including TPC and TLAC, are headquartered in Connecticut. The remaining Defendants are not headquartered in either of the potential forum states. While Connecticut would be more convenient for the Travelers' Defendants, traveling to Philadelphia is probably not as significant a hardship for the Defendants from Connecticut as it would be for Ms. Ayling to travel to Connecticut. On the other hand, Ms. Ayling is not the only party to the plaintiff's side. Since she is bringing the suit on behalf of a nationwide class, it is not clear how convenient Pennsylvania would be to other members of the putative class.

The Defendant also argues that a plaintiff's choice of forum deserves less deference in a class action than in ordinary litigation. See, *Bolton v. Tesoro Petroleum Corp., 549 F. Supp. 1312, 1314-15 (E.D. Pa. 1982)* [*10] (finding that plaintiff's forum choice is of less weight in actions in which the nominal plaintiff's role is likely to be quite minimal). As Plaintiff has proposed a nationwide class, this suit probably could have been brought in almost any state in which TPC does business. Since the named plaintiff in a class action is often not very relevant to the litigation, the Defendants' point is well taken. However, Plaintiff asserts that her role in this litigation could be extensive and that she has a significant financial stake in the outcome of the litigation. At this point in the proceedings we accept these statements as true. Since this is not a derivative security suit, Ms. Ayling's role may be more than nominal. It is difficult to make a showing that will overcome the strong presumption towards keeping the plaintiff's chosen forum. Therefore, the 'convenience of parties' factor favors denying the transfer.

2. Convenience of the Witnesses:

The Plaintiff, in her brief, spends significant time arguing against the Travelers' Defendants' claim that the 'convenience of witnesses' factor favors Connecticut. The focus of Plaintiff's position is that the Defendants have not specifically [*11] identified which witnesses will testify. See, Pl. Mem. in Opp. pp. 8-11. In assessing the propriety of a district court's decision to transfer an action, the Court of Appeals for the Third Circuit has required that defendants submit affidavits, depositions or

other evidence to support their motion for transfer. See, *Plum Tree v. Stockment, 488 F.2d 754, 756 (3d. Cir. 1973).* The Defendants have included such documentation in their Reply Brief. See, Affidavit of Peter F. Sexton, Associate General Counsel of TPC, dated September 28, 1999 ("Sexton Aff."). Sexton lists four witnesses who are likely to testify in this case by name and position. Sexton Aff. P 6. There is some credibility to Sexton's declaration because the Defendants have gone through three similar suits and should now know who is likely to testify in a suit raising similar claims. All four of these witnesses work and reside in Connecticut. The only potential witness identified by the Plaintiff is Ms. Ayling herself (although they do assert that several key witnesses live in the Eastern District of Pennsylvania without any further elaboration. See, Pl. Mem in Opp. p. 14). It would not be [*12] an overwhelming inconvenience for the Travelers' Defendants to transport four witnesses to Philadelphia. However, since the Plaintiff has only speculatively identified one witness who resides in Pennsylvania, the Court finds that the Defendants have demonstrated that the 'convenience of witnesses' factor favors transfer to Connecticut.

3. Access to Documents:

Defendants state that the vast majority of the documents are located at TPC's headquarters in Hartford. Sexton Aff. P 7. However, it is not clear how great a burden it would be to move the necessary documents to Philadelphia. The Plaintiffs do not argue that any of the relevant documents are located in this district. The Court finds on balance that while this factor favors transfer, it should not be accorded great weight.

4. Practical Considerations Making Litigation Easy, Expeditious and Inexpensive.

The Supreme Court has stated that to permit a situation in which two cases involving precisely the same issues are simultaneously pending in two different District Courts leads to the wastefulness of time, energy and money that *§ 1404(a)* was designed to prevent. See, *Continental Grain, 364 U.S. at 26*. [*13] Therefore, [HN11] courts have found that the presence of related cases in the transferee forum is a reason to grant a transfer. See, e.g., *Prudential Insurance Company of America v. Rodano, 493 F. Supp. 954, 955 (E.D. Pa. 1980)*; *Jontri Transp. Co. v. North Bank Dev. Co., 1990 U.S. Dist. LEXIS 10857, 1990 WL 121511 at *2 (E.D. Pa. 1990)*. In fact this consideration is powerful enough to tilt the balance in favor of a transfer even when the convenience of the parties and witnesses would point to a denial. See, *Blanning v. Tisch, 378 F. Supp. 1058, 1061 (E.D.Pa.1974)*. The Plaintiff distinguishes *Continental* because in that case the action transferred arose out of the same incident as the related case. She asserts that this

case involves different parties and different facts. However, in reviewing the Abdullah, Macomber and Huaman complaints, this Court finds them to be almost identical to Ms. Ayling's complaint. The Defendants are virtually the same. So too are the factual allegations of RICO violations, common law fraud, negligent misrepresentation and violations of state insurance and trade acts. Each of the actions was on the behalf of the same [*14] class of persons who entered into structured settlements with TPC from 1982 to the present. Therefore, the only real difference is who the class has decided to name as lead plaintiff. Of course the particular factual allegations pertaining to the structured settlement entered into by Ms. Ayling will be different than those made by the named plaintiffs in Abdullah, Macomber and Huaman. But the point of these putative class actions is that the Travelers' Defendants engaged in a pattern of behavior that harmed any plaintiff who entered into a structured settlement with TPC. The result of these actions will be a determination of whether the Travelers' Defendants have defrauded plaintiffs with whom they entered structured settlements by engaging in the allegedly illegal rebating scheme. Allowing two separate actions on behalf of the same class might lead to inconsistent results, even if the witnesses and documentary evidence were identical. Furthermore, as Judge Eginton is already familiar with the factual and legal issues of the putative class' allegations, having him decide the present matter would serve the interests of judicial efficiency. [4] This factor favors transfer [*15] of the case to the District of Connecticut.

> 4  Due to Judge Eginton's knowledge of the factual allegations, and the very similar nature of Ms. Ayling's Complaint to those he has previously ruled upon, this Court feels that a transfer would be justified even if the Abdullah complaint is dismissed prior to transfer.

5. Calendar Congestion:

[HN12] Although courts may consider calendar congestion in ruling upon a 1404(a) motion, the relative congestion of the respective courts dockets is not a factor of great importance in this type of motion. See, *Kisko v. Penn. Cent. Transp. Co., 408 F. Supp. 984 (M.D. Pa. 1976).* It appears, given the more complete analysis provided by the Plaintiffs, that Connecticut has a more congested forum. However, the real issue would be the congestion of Judge Eginton's docket, because if the case were transferred to Connecticut, it would most likely be assigned to him. The Court does not currently have information concerning Judge Eginton's docket. Therefore, [*16] although this factor leans slightly towards denying the transfer, it will be assigned little weight.

6. Where the events at issue took place.

In Continental Grain Co., a court transferred a suit from New Orleans to Memphis because a related case arising from the same boat crash in Memphis was already under consideration in that city. *364 U.S. at 19.* The cases involving the Travelers' Defendants are likewise similar in so far as they all arise from the same corporate policy decisions by TPC to allegedly defraud their customers. [HN13] Where plaintiff's cause of action arises from strategic policy decisions of a defendant corporation, the defendant's headquarters can be considered the place where events giving rise to the claim occurred. See, *Paul v. Lands' End, 742 F. Supp. 512, 514 (N.D. Ill. 1990)* (granting transfer to district of corporation's headquarters after finding that plaintiffs' cause of action essentially stemmed from corporate policy and decisions made at the corporation's headquarters). If Plaintiff is to prove her case, she will have to show that TPC made certain decisions that affected the whole organization. The type of decision [*17] that could have this kind of effect would likely have been made at the highest levels of TPC management in Hartford. Such decisions included (1) entering exclusive agreements with the various brokerages through whom the annuities were purchased, (2) arranging rebates of the commissions paid to the brokers for selling the annuities, and (3) not sharing the true cost of the annuity with the plaintiffs. So while it is true that Ms. Ayling did not enter into the settlement in Connecticut, the decisions that led to her alleged injury all were made in Connecticut. The Defendant also asserts that the majority of structured settlements entered into by TPC were created and approved at TPC's Hartford headquarters. Sexton Aff., P 7. Since Connecticut is the place where the events giving rise to this claim occurred, this factor favors a transfer of venue.

7. Enforceability of Judgment.

As both sides agree, a judgment obtained in either the Eastern District of Pennsylvania or the District of Connecticut will be equally enforceable.

8. Familiarity of the Trial Judge with Applicable State Law.

As to the federal claims, both Judge Eginton and this court are equally familiar [*18] with the applicable federal claims. Of course, Judge Eginton is more familiar with the particular factual allegations. The two complaints that Judge Eginton has dismissed, Macomber and Huaman, both stated violations of Connecticut's Unfair Trade and Insurance Practice Acts. Judge Eginton obviously found that the allegations did not support a claim under either of these acts. The Ayling complaint attempts to state a claim under the equivalent Pennsylvania statutes and similar statutes in other states (one of which is presumably Connecticut). Therefore, the trial judge will have to be familiar not just with Pennsylvania state law,

but with similar statutes of many states. Judge Eginton's familiarity of the law of other states is likely comparable to this Court's. This factor is neutral with regard to transfer. Judge Eginton's factual knowledge weighs in favor of transfer while this Court's better familiarity with Pennsylvania state law weighs against the transfer.

**IV. Conclusion.**

The Court finds a transfer of venue to the District of Connecticut is justified in this case. Connecticut is a forum more related to this action as the events giving rise to the claim occurred [*19] in that state. Also, the Defendants, identified witnesses and documents reside in that state. The interests of judicial efficiency require the transfer as the trial judge currently has a virtually identical case before him and is very familiar with the factual allegations at the center of this Complaint. The only significant factor weighing against the transfer is the putative class' choice of Ms. Ayling, a paraplegic resident of Pennsylvania, as its lead plaintiff. The plaintiff's choice of forum has been given significant weight, but the Court finds that the other interests overcome the strong presumption towards the choice of Pennsylvania as a forum. Therefore, Defendant's motion is granted in its entirety.

An appropriate Order follows.

**ORDER**

AND NOW, this 27th day of October, 1999, upon consideration of Defendants' Motion to Transfer Venue to the District of Connecticut (Docket No. 11), Plaintiff's Response thereto (Docket No. 15), and Defendants' Reply (Docket No. 16); it is hereby **ORDERED** that Defendants' Motion is **GRANTED** and this case is Transferred to the District of Connecticut.

BY THE COURT:

RONALD L. BUCKWALTER, J.

LEXSEE 2005 U.S. DIST. LEXIS 34902



Caution
As of: Jan 28, 2008

BANK OF AMERICA, N.A. (USA), Plaintiff, v. US AIRWAYS, INC., US AIR-
WAYS GROUP, INC. and AMERICA WEST AIRLINES, INC., Defendants, and
JUNIPER BANK, Intervenor.

Civil Action No. 05-793-JJF

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF DELAWARE

*2005 U.S. Dist. LEXIS 34902*

December 21, 2005, Decided

**SUBSEQUENT HISTORY:** Later proceeding at, Transferred to *Bank of Am., N.A. (USA) v. US Airways, Inc., 2006 U.S. Dist. LEXIS 49026 (E.D. Va., July 19, 2006)*

**COUNSEL:** [*1] Richard L. Horwitz, Esquire, Kevin R. Shannon, Esquire and Brian C. Ralston, Esquire of POTTER, ANDERSON & CORROON LLP, Wilmington, Delaware. Of Counsel: Evan R. Chesler, Esquire and David R. Marriott, Esquire of CRAVATH, SWAINE & MOORE LLP, New York, New York, for Plaintiff Bank of America, N.A. (USA).

David C. McBride, Esquire, Martin S. Lessner, Esquire and Christian Douglas Wright, Esquire of YOUNG CONAWAY STARGATT & TAYLOR, LLP, Wilmington, Delaware. Of Counsel: Mark H. Epstein, Esquire and Kristin Linsley Myles, Esquire of MUNGER, TOLLES & OLSON LLP, Los Angeles, California, for Defendants US Airways, Inc., US Airways Group, Inc. and America West Airlines, Inc.

Kenneth J. Nachbar, Esquire of MORRIS, NICHOLS, ARSHT & TUNNELL, Wilmington, Delaware, for Intervenor Juniper Bank.

**JUDGES:** Farnan, District Judge.

**OPINION BY:** Joseph J. Farnan Jr.

**OPINION**

*MEMORANDUM OPINION*

December *21*, 2005

Wilmington, Delaware

Joseph J. Farnan Jr.

**Farnan, District Judge.**

Pending before the Court are Defendants' Motion To Transfer To The Eastern District Of Virginia (D.I. 5) and Plaintiff's Motion For Expedited Remand To Vice Chancellor Strine Of The Delaware Chancery Court [*2] (D.I. 11). For the reasons discussed, the Court will grant Defendants' Motion To Transfer and decline to rule on Plaintiff's Motion To Remand.

**BACKGROUND**

Plaintiff Bank of America, N.A. (USA) ("Bank of America") is a Delaware corporation with its principal executive offices in Arizona. Defendants US Airways, Inc. and US Airways Group, Inc. are Delaware corporations with their principal executive offices in Virginia. US Airways, Inc. is the principal operating subsidiary of US Airways Group, Inc. Defendant America West Airlines Inc., which is wholly owned by America West Holdings Corp., is a Delaware corporation with its principal executive offices in Arizona.

In May, 2003, Bank of America and US Airways, Inc. entered into a co-branded credit card agreement under which Bank of America was to be the sole issuer of the US Airways credit card to United States residents until December 3, 2008. On September 27, 2005, as a part of US Airways Group's reorganization plan under

Chapter 11 of the United States Bankruptcy Code, US Airways Group merged with America West Holdings, with the merged entity operating under the US Airways name. In August, 2005, America West, US Airways Group, [*3] and Juniper Bank ("Juniper") entered into an agreement under which Juniper will issue a co-branded credit card for US Airways. That agreement took effect with the merger on September 27, 2005.

By its Complaint, Bank of America alleges breach of contract and tortious interference with contract and prospective economic relations. Specifically, Bank of America alleges that, as a result of contracting with Juniper to issue a US Airways credit card, Defendants breached provisions on exclusivity and marketing obligations in the co-branded card agreement between them and Bank of America. Bank of America further alleges that America West tortiously interfered with its contract with US Airways and that both America West and US Airways Group tortiously interfered with its prospective economic advantage. Bank of America seeks unspecified monetary damages, specific performance of the co-branded card agreement, and injunctive relief barring Juniper from issuing a US Airways credit card.

Bank of America originally filed this action in the Court of Chancery for the State of Delaware in and for New Castle County as Del. Ch. C.A. No. 1713-N. On November 15, 2005, Defendants and Juniper removed the [*4] action to this Court (D.I. 1) and on November 16, 2005, Defendants filed their Motion To Transfer (D.I. 5). On November 23, 2005, Bank of America filed its Motion For Expedited Remand (D.I. 11).

## DISCUSSION

### I. Whether The Court Has Subject Matter Jurisdiction

Bank of America contends that the Court must deny Defendant's Motion To Transfer and grant its Motion To Remand because the Court lacks subject matter jurisdiction. (D.I. 12 at 10; D.I. 18 at 3.) Defendants contend that the Court has subject matter jurisdiction under *28 U.S.C. § 1334(b)* because this case is a core proceeding within the meaning of *28 U.S.C. § 157(b)* and is related to a case under title 11. The Court concludes that it does have subject matter jurisdiction.

*Section 1334(b)* provides in relevant part that "the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11." *28 U.S.C. § 1334(b)*. The Court of Appeals for the Third Circuit has given a broad interpretation to "related to," even in cases like this one that arise after [*5] confirmation of the debtor's reorganization plan. *See Binder v. Price Water-*

*house & Co., LLP (In re Resorts Int'l, Inc.), 372 F.3d 154, 164 (3d Cir. 2004)*. Under *§ 1334(b)*'s "related to" standard, a district court has jurisdiction of a proceeding if "the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy." *Id.* (quoting *Pacor, Inc., v. Higgins, 743 F.2d 984, 994 (3d Cir. 1984)*). A proceeding is related to a case under title 11 "if the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankrupt estate." *Id.* According to Defendant's brief in support of their Motion To Transfer, a significant percentage of the cash needed to implement US Airways' Chapter 11 reorganization plan was to come from the contract with Juniper, which Bank of America seeks to enjoin. (D.I. 6 at 11.) Taking this into account, and applying the Third Circuit's broad standard, the Court concludes that this action is related to Defendants' case under title 11. Therefore, the Court has subject matter jurisdiction [*6] under *28 U.S.C. § 1334(b)*.

### II. Whether The Court Should Transfer Venue To The Eastern District Of Virginia

Defendants contend that the Court should transfer venue to the United States District Court for the Eastern District of Virginia where proceedings concerning US Airways' Chapter 11 case are pending before the Honorable Stephen S. Mitchell. (D.I. 6 at 1.) In support of this contention, Defendants argue that, because Judge Mitchell has presided over this large and complex bankruptcy, he is in a better position than this Court to weigh the issues raised by Bank of America's Motion to Remand as well as its Complaint. In response, Bank of America contends that its choice of forum should be given substantial deference and that Defendants have not met their burden, under *28 U.S.C. § 1412*, of showing that transfer of venue would serve the interest of justice or the convenience of the parties. (D.I. 18 at 6.)

*Secton 1412* provides that "[a] district court may transfer a case or proceeding under title 11 to a district court for another district, in the interest of justice or for the convenience of the parties." *28 U.S.C. § 1412*. [*7] A determination of whether to transfer a proceeding under *§ 1412* should be based on the same factors used to decide a motion to transfer under *§ 1404(a)*, which permits a court to transfer any civil action for the convenience of the parties or in the interest of justice. *Son v. Coal Equity, Inc. (In re Centennial Coal, Inc.), 282 B.R. 140, 144 (Bankr. D. Del. 2002)*. The Third Circuit set forth a list of those factors in *Jumara v. State Farm Ins. Co., 55 F.3d 873, 879-80 (3d Cir. 1995)*. That list includes: (1) the plaintiff's choice of forum; (2) the defendant's preferred forum; (3) whether the claim arose else-

2005 U.S. Dist. LEXIS 34902, *

where; (4) the convenience of the parties as indicated by their relative physical and financial condition; (5) the convenience of the witnesses, but only to the extent that the witnesses may actually be unavailable for trial in one of the fora; (6) the location of books and records, similarly limited to the extent that the files could not be produced in one of the fora; (7) the enforceability of the judgment; (8) practical considerations that could make the trial easy, expeditious, or inexpensive; (9) the relative administrative difficulty in the two fora resulting from [*8] court congestion; (10) the local interest in deciding local controversies at home; (11) the public policies of the fora; and (12) the familiarity of the trial judge with the applicable state law. *Id.* The burden is on the movant to establish that the balance of the interests weighs strongly in favor of transfer. *Datex-Ohmeda, Inc. v. Hill-Rom Services, Inc., 185 F.Supp.2d 407, 412 (D. Del. 2002).*

Having considered all of the relevant factors, the Court concludes that the balance of interests here weighs strongly in favor of transferring this action to the Eastern District of Virginia, where related bankruptcy matters are pending. That conclusion is based largely on the eighth factor, practical considerations. Judge Mitchell is simply in a far better position than this Court to expeditiously decide critical questions pertaining to Bank of America's Motion To Remand and the merits of the case. For example, Bank of America contends that the Court must abstain from hearing this case pursuant to *28 U.S.C. § 1334(c)(2)*, because it is not a core proceeding. (D.I. 12 at 21.) Defendants, on the other hand, contend that the claims in the Complaint [*9] are "functionally identical" to administrative claims filed by Bank of America in US Airways' Chapter 11 proceedings, (D.I. 6 at 1), and that those administrative claims, therefore, transform this action into a core proceeding, *Id.* at 9-10. Also at issue with respect to the Motion For Remand, is the effect on the Court's jurisdiction of a paragraph in Judge Mitchell's order confirming the reorganization plan, which reserves

certain of Bank of America's rights with respect to the co-branded credit card agreement. (D.I. 13, Ex. 13 at 49.) Another crucial issue in contention is the importance to the reorganization plan of the cash received by US Airways from its contract with Juniper. (D.I. 6 at 10-11.) Judge Mitchell, being vastly more familiar with the nature of the administrative claims filed by Bank of America, the correct interpretation of his own orders, and the details of US Airways' reorganization plan, is well positioned to quickly and efficiently resolve these and other issues, whereas this Court would have to expend considerably more time and resources to arrive at a just resolution. Therefore, the Court concludes that, for practical considerations alone, it is in the interest [*10] of justice to transfer this case to the Eastern District of Virginia.

**CONCLUSION**

For the reasons discussed, the Court will grant Defendants' Motion To Transfer To The Eastern District Of Virginia (D.I. 5). The Court declines to rule on Plaintiff's Motion For Expedited Remand To Vice Chancellor Strine Of The Delaware Chancery Court (D.I. 11).

An appropriate order will be entered.

***ORDER***

At Wilmington, this *21* day of December 2005, for the reasons set forth in the Memorandum Opinion issued this date,

IT IS HEREBY ORDERED that:

1. Defendants' Motion To Transfer To The Eastern District Of Virginia (D.I. 5) is ***GRANTED.***

2. This case is transferred to the United States District Court for the Eastern District of Virginia.

Joseph J. Farnan Jr.

UNITED STATES DISTRICT JUDGE

LEXSEE 2008 U.S. DIST. LEXIS 1487

**HOWARD HESS DENTAL LABORATORIES INC. and PHILIP GUTTIEREZ d/b/a Dentures Plus, on behalf of themselves and all others similarly situated, Plaintiffs, v. DENTSPLY INTERNATIONAL, INC., Defendant. JERSEY DENTAL LABORATORIES f/k/a Howard Hess Dental Laboratories Incorporated, and PHILIP GUTTIEREZ d/b/a Dentures Plus, on behalf of themselves and all others similarly situated, Plaintiffs, v. DENTSPLY INTERNATIONAL, INC., and named dental dealers, Defendants.**

**Civ. No. 99-255-SLR, Civ. No. 01-267-SLR**

**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF DELAWARE**

*2008 U.S. Dist. LEXIS 1487*

**January 8, 2008, Decided**

**COUNSEL:** [*1] For Plaintiffs: Pamela S. Tikellis, Esquire, Robert J. Kriner, Jr., Esquire, and Scott M. Tucker, Esquire of Chimicles & Tikellis LLP, Wilmington, Delaware; Thomas A. Dubbs, Esquire and Richard T. Joffe, Esquire of Labaton Sucharow & Rudoff LLP, New York, New York.

For Accu Bite, Inc., Hendon Dental Supply, Inc. and Henry Schein Inc., Defendants: W. Harding Drane, Jr., Esquire of Potter Anderson & Corroon LLP, Wilmington, Delaware.

For Benco Dental Co., Defendant: Darryl Anthony Parson, Esquire of Drinker Biddle & Reath LLP, Wilmington, Delaware.

For Burkhart Dental Supply Co., Defendant: Kurt M. Heyman, Esquire and Particia L. Enerio, Esquire of Proctor Heyman LLP, Wilmington, Delaware.

For Darby Dental Laboratory Supply Co., Inc., Defendant: Henry E. Gallagher, Esquire of Connolly Bove Lodge & Hutz LLP, Wilmington, Delaware.

For Dentsply International Inc., Defendant: William D. Johnston, Esquire and Christian Douglas Wright, Esquire of Young, Conaway, Stargatt & Taylor, LLP, Wilmington, Delaware; Margaret M. Zwisler, Esquire, Eric J. McCarthy, Esquire, and Amanda P. Biles, Esquire of Latham & Watkins LLP, Washington, D.C., and Brian M. Addison, Esquire, of Dentsply International Inc., [*2] York, Pennsylvania.

For Patterson Dental Co., Defendant: William J. Wade, Esquire of Richards, Layton & Finger, Wilmington, Delaware.

For Pearson Dental Supply, Inc., Defendant: James J. Maron, Esquire, and Antionette Hubbard, Esquire of Maron Marvel Bradley & Anderson, P.A., Wilmington, Delaware.

**JUDGES:** Sue L Robinson, District Judge.

**OPINION BY:** Sue L Robinson

**OPINION**

**MEMORANDUM OPINION**

    January 8, 2008

    Wilmington, Delaware

    **Sue L Robinson, District Judge**

**I. INTRODUCTION**

    Pending before the court are several motions in two related cases. Plaintiffs Howard Hess Dental Laboratories, Inc. ("Hess") and Philip Guttierez d/b/a Dentures Plus ("Dentures Plus") filed an antitrust class action against Dentsply International, Inc. ("Dentsply") on April 21, 1999. *Hess Dental Laboratories, et. al v. Dentsply International Inc. ("Hess")*, Civ. No. 99-255 (D.I. 1). Hess subsequently became Jersey Dental Laboratories ("Jersey Dental") and, on April 24, 2001, the same plaintiffs filed an antitrust class action against Dentsply and

2008 U.S. Dist. LEXIS 1487, *

twenty-six dental dealers. *Jersey Dental Laboratories f/k/a Howard Hess Dental Laboratories, Inc. and Philip Guttierez d/b/a Dentures Plus v. Dentsply et. al ("Jersey Dental"),* Civ. No. 01-267 (D.I. 1). The court [*3] has previously denied plaintiffs' motion for summary judgment in *Hess.* (Civ. No. 99-255, D.I. 271 [1]) By the same order, the court dismissed several of plaintiffs' counts in *Jersey Dental.* [2] (Id.)

> 1   Also found at Civ. No. 01-267, D.I. 315; *516 F.Supp.2d 324 (D. Del. 2007).* For ease of reference, the court will refer to its opinion as docketed in *Hess.*

> 2   The remaining dealer defendants are: A. Leventhal & Sons, Inc.; Accubite Dental Lab, Inc.; Addium Dental Products; Benco Dental Company; Burkhart Dental Supply Company; Darby Dental Laboratory Supply Co., Inc.; Edentaldirect.com, Inc., as successor to Crutcher Dental, Inc.; Hendon Dental Supply, Inc.; Henry Schein, Inc. and its affiliates, including, without limitation, Zahn Dental Co., Inc.; Jahn Dental Supply Company; Midway Dental Supply Inc.; Nashville Dental, Inc.; Patterson Dental Company, its subsidiaries, predecessors, successors, assigns, affiliates, and related companies; and Pearson Dental Supplies, Inc.. The court previously granted motions to dismiss filed by several non-Delaware dealer defendants and defendant Nowak Dental Supplies. (Civ. No. 01-267, D.I. 266, 274, 316)

Currently before the court is plaintiffs' motion to supplement [*4] the record in *Hess* and requesting that the court's most recent order be amended to reflect such supplementation. (Civ. No. 99-255, D.I. 274) In *Jersey Dental,* plaintiffs have moved for a certificate of appealability with respect to the dismissed claims and for a stay of proceedings during the pendency of any appeal. (Civ. No. 01-267, D.I. 318) For the following reasons, the court denies plaintiffs' motion to supplement the record in *Hess.* The court grants plaintiffs' motion requesting certification of the dismissed counts in *Jersey Dental,* and stays proceedings on plaintiffs' remaining claim pending any appeal.

## II. BACKGROUND

The procedural history of this action has been well documented in the court's prior opinions, and will be repeated here by way of summary. The *Hess* and *Jersey Dental* lawsuits are antitrust actions concerning a policy of Dentsply International Inc. ("Dentsply") called "Dealer Criterion 6," which was used by Dentsply, a leading manufacturer and distributor of dental products, to discourage dental dealers from carrying competitors'

lines of artificial teeth. The first action to be filed concerning Dealer Criterion 6 was filed by the United States ("the [*5] government action") in 1999. (Civ. No. 99-005, D.I. 1) The result of this litigation was a judgment by the United States Court of Appeals for the Third Circuit that Dentsply violated *section 2 of the Sherman Act*; [3] this court entered injunctive relief in 2006 directing Dentsply to cease its use of Dealer Criterion 6 and other exclusionary practices. (Id., D.I. 559)

> 3   *United States v. Dentsply Int'l, 399 F.3d 181 (3d Cir. 2005)* ("*Dentsply*").

On April 21, 1999, plaintiffs filed their complaint in *Hess* in which only Dentsply was named as the defendant. (Id., D.I. 1) Plaintiffs alleged conspiracy to restrain trade, restraint of trade, and three violations of *Section 2 of the Sherman Act*: monopolization (count II); attempt to monopolize (count III); and conspiracy to monopolize (count IV). (Id.) The only remaining of these claims is plaintiffs' count II monopolization claim. (Id., D.I. 273) Plaintiffs sought both damages and injunctive relief for Dentsply's monopolization. (Id., D.I. 1 at P 64)

The court previously granted Dentsply's motion for summary judgment in *Hess* on plaintiffs' damages claims, reasoning that plaintiffs did not have standing to pursue damages under *Illinois Brick Co. v. Illinois, 431 U.S. 720, 97 S. Ct. 2061, 52 L. Ed. 2d 707 (1977)* [*6] ("*Illinois Brick*"). Plaintiffs subsequently filed *Jersey Dental* against Dentsply and its dental dealers, alleging Sherman Act violations arising from the same exclusive dealing arrangement, and seeking both damages and injunctive relief. (Civ. No. 01-267, D.I. 1) The court, again, found that plaintiffs could not recover damages from Dentsply under *Illinois Brick,* and dismissed the damages portion of plaintiffs' claims against Dentsply. (Id., D.I. 166, [4] 167)

> 4   Found at *180 F.Supp.2d 541 (D. Del. 2001).*

Plaintiffs thereafter moved to amend the complaint in *Jersey Dental* in an attempt to overcome some of these deficiencies. The proposed amended complaint alleged, *inter alia,* that defendants have engaged in a retail price-fixing conspiracy. (Id., D.I. 170, exs. A & B) The court denied leave to amend, reasoning that plaintiffs' amended claims would not withstand a motion to dismiss. On a consolidated appeal, the Third Circuit affirmed the court's *Illinois Brick* rulings with one exception. *See Howard Hess Dental Labs. Inc. v. Dentsply Int'l, 424 F.3d 363, 384 (3d Cir. 2005).* Plaintiffs are not permitted to recover damages from Dentsply in *Hess* (*id. at 370-73*); plaintiffs can proceed under [*7] the co-conspirator exception of *Illinois Brick* to pursue an action for overcharge damages caused by the alleged vertical price-

2008 U.S. Dist. LEXIS 1487, *

fixing conspiracy in *Jersey Dental*. *Id. at 378 & 384 n.19.*

Plaintiffs' response to the Third Circuit's decision was to file an amended complaint in *Jersey Dental* which not only contained price fixing claims (count I), but also included section 2 group boycott and conspiracy to monopolize claims (counts II-V). On September 23, 2007, the court dismissed the Section 2 claims. (Civ. No. 99-255, D.I. 271) The court found plaintiffs barred from recovering damages pursuant to *Illinois Brick* (counts II & IV), and that plaintiffs cannot establish that they are entitled to a second injunction against Dentsply for the same conduct currently enjoined by the government's injunction (counts III & V). (*Id.*)

Concurrently, the court denied plaintiffs' motion for summary judgment in *Hess*. Plaintiffs argued that the Third Circuit's prior opinion in *Dentsply* collaterally estopped Dentsply from contesting its liability for monopoly maintenance in *Hess*. The court disagreed, insofar as monopoly maintenance claims require the demonstration of antitrust injury, whereas the prior litigated [*8] claims did not. (*Id.* at 13-16) Additionally, the court found that the record did not demonstrate why plaintiffs should be entitled to additional injunctive relief. [5] (*Id.* at 16-18)

5   The injunction granted in *Dentsply* is found at Civ. No. 99-005, D.I. 559.

On October 26, 2007, the parties stipulated to the dismissal of plaintiffs' remaining section 2 claims that were not the subject of plaintiffs' summary judgment motion. (Civ. No. 99-255, D.I. 273) Plaintiffs now move the court to supplement the record in *Hess* to provide information regarding its purported injuries (and to amend its prior summary judgment order to reflect such supplementation). (*Id.*, D.I. 274) Plaintiffs do not submit any additional evidence regarding their purported entitlement to additional injunctive relief, directing the court to its previous arguments of record. (*Id.*, D.I. 275 at 7 & n.4, citing D.I. 257 at 22-23) Plaintiffs "do not expect that the original determination in the [court's memorandum opinion] will be reversed" by any of its supplemental evidence, but seek to ripen the case for purposes of a consolidated appeal. (*Id.* at 8) Plaintiffs also move to certify the court's order dismissing its exclusive dealing [*9] claims in *Jersey Dental* for purposes of appeal. (Civ. No. 01-267, D.I. 318)

## III. LEGAL STANDARDS

### A. Motion for Reconsideration

Plaintiffs seek to introduce factual evidence of antitrust injury not before the court on summary judgment. Though captioned a "motion to supplement," plaintiffs'

motion is more appropriately considered as a motion to reconsider the court's summary judgment opinion in view of this additional evidence.

Motions for reconsideration are the "functional equivalent" of motions to alter or amend judgment under *Federal Rule of Civil Procedure 59(e)*. *See Jones v. Pittsburgh Nat'l Corp., 899 F.2d 1350, 1352 (3d Cir. 1990)* (citing *Fed. Kemper Ins. Co. v. Rauscher, 807 F.2d 345, 348 (3d Cir. 1986)*). The standard for obtaining relief under *Rule 59(e)* is difficult for a movant to meet, and motions for reconsideration or reargument "shall be sparingly granted," D. Del. LR 7.1.5 (effective June 30, 2007). The purpose of such motions is to "correct manifest errors of law or fact or to present newly discovered evidence." *Max's Seafood Cafe ex rel. Lou-Ann, Inc. v. Quinteros, 176 F.3d 669, 677 (3d Cir. 1999)*. Accordingly, a court may only alter or amend its judgment if the movant [*10] demonstrates at least one of the following: (1) a change in the controlling law; (2) the availability of new evidence; or (3) a need to correct a clear error of law or fact or to prevent manifest injustice. *See id.* A motion for reconsideration is not properly grounded on a request that a court rethink a decision already made, *see Glendon Energy Co. v. Borough of Glendon, 836 F. Supp. 1109, 1122 (E.D. Pa. 1993)*, and may not be used "as a means to argue new facts or issues that inexcusably were not presented to the court in the matter previously decided," *Brambles USA, Inc. v. Blocker, 735 F. Supp. 1239, 1240 (D. Del. 1990)*. Reconsideration, however, may be appropriate where "the Court has patently misunderstood a party, or has made a decision outside the adversarial issues presented to the Court by the parties, or has made an error not of reasoning but of apprehension." *Brambles USA, 735 F. Supp. at 1241* (citations omitted).

### B. Certification as a Final Judgment

*Rule 54(b)* states, in pertinent part:

> When more than one claim for relief is presented in an action, . . . or when multiple parties are involved, the court may direct the entry of a final judgment as to one or more but fewer than [*11] all of the claims or parties only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment.

*Fed. R. Civ. P. 54(b)*. Although the decision whether to certify as a final judgment rests in the discretion of the trial court, *see Sears, Roebuck & Co. v. Mackey, 351 U.S. 427, 437, 76 S. Ct. 895, 100 L. Ed. 1297 (1956)*, the

Supreme Court in *Curtiss-Wright Corp. v. General Electric Co., 446 U.S. 1, 100 S. Ct. 1460, 64 L. Ed. 2d 1 (1980)*, suggested two relevant factors a trial court should consider in deciding whether there is just reason for delay: (1) judicial administrative interests; and (2) the equities of the parties involved, *see id. at 8*. Consideration of judicial administration counsels against piecemeal review that would force appellate courts to decide the same issues on subsequent appeal. *See id.*

## IV. DISCUSSION

### A. Plaintiff's Motion to Supplement in *Hess*

By letter dated September 1, 2006, plaintiffs' counsel informed the court that the parties had agreed to proceed in *Hess* by briefing plaintiffs' proposed motion for summary judgment, which motion ultimately requested an injunction and related relief, "based on the fact that, in the government's case [*Dentsply*], Dentsply ha[d] already [*12] been found liable for the violation alleged by the *Hess* plaintiffs. *See New York v. Julius Nasso Concrete Corp., 202 F.3d 82, 86 (2d Cir. 2000)* (affirming summary judgment establishing defendant's antitrust liability, based on collateral estoppel)." (Civ. No. 99-255, D.I. 252) No discovery was taken; the record was limited to that reviewed by the Third Circuit in *Dentsply*.

The court denied plaintiffs' motion, in part because plaintiffs had not adequately explained why the government's injunction was insufficient to prevent Dentsply from engaging in anti-competitive practices. In its decision, the court observed that plaintiffs had only alleged that they were "threatened with loss or injury proximately resulting from the recurrence of Dentsply's exclusive dealing/monopoly maintenance" without pointing to any evidence of such in the record. (Civ. No. 99-255, D.I. 271 at 16-18) In response, plaintiffs filed the instant motion to supplement the record with the expert report of Dr. Raymond S. Hartman, who opined that the "but-for" prices of Dentsply teeth would have been "34% to 53% lower" absent Dentsply's exclusive dealing practices during the period of 1987-1999. In total, Dr. Hartman [*13] calculated that, as a result of the artificial price increase resulting from Dentsply's exclusive dealing policy, the class-wide overcharges during this period "range from $ 225 million to $ 351 million," depending on what "but-for" scenario were applied. (Civ. No. 99-255, D.I. 277 at A6, A42-53 (P 10(g), P 43))

At this juncture, the Third Circuit has held that plaintiffs are not entitled to money damages (based on *Illinois Brick*) and this court has opined that plaintiffs have failed to demonstrate either that Dentsply is likely to further engage (either during or after the injunction imposed in *Dentsply*) in the anti-competitive conduct that is the subject of these related lawsuits or that plaintiffs

would be specifically injured if Dentsply did so engage. [6] While the evidence plaintiffs propose to add to the record could be relevant to their cause of action had they demonstrated that Dentsply is likely to re-engage in the violative conduct, it is irrelevant to the case as litigated by plaintiffs. Therefore, the motion to supplement is denied. As a consequence, there do not appear to be any further issues to resolve in this case. Nevertheless, the parties, through their litigation strategies, [*14] have made it awkward procedurally to close the case for purposes of appellate review, Dentsply having failed to file either a motion to dismiss or a motion for summary judgment. Accordingly, the court will order the parties to either enter a stipulation or, if they are unable to come to agreement, to both submit proposed orders to accomplish closure of *Hess*, either through dismissal or through the entry of judgment.

6   In other words, plaintiffs failed to prove their entitlement to additional injunctive relief.

### B. Plaintiff's Motion Requesting Certification of the Court's Order Dismissing Counts II-V in *Jersey Dental*

The dismissed claims of *Hess* and *Jersey Dental* involve the same exclusive dealing allegations. The procedural history of the cases is intertwined. Moreover, the court addressed plaintiffs' summary judgment motion on its exclusive dealing allegations in *Hess* in the same memorandum opinion as defendants' motions to dismiss the exclusive dealing claims in *Jersey Dental*; the Third Circuit will review the court's consolidated opinion.

Defendants premise their opposition to a consolidated appeal on the fact that they intend to file a motion to dismiss plaintiffs' remaining price fixing [*15] claim (count I), rendering appellate review of the section 2 exclusive dealing claims premature. (Civ. No. 01-267, D.I. 323 at 6, 9-15) Even assuming this to be the case, the issue presented in count I -- whether plaintiffs have adequately pled their price fixing claim in view of the Supreme Court's recent precedent [7] -- would not require an appellate panel to delve deeply into the history and/or disposition of the exclusive dealing counts. Having considered defendants' arguments, and finding them unpersuasive in this regard, the court finds no just reason to delay plaintiffs' appeal of the dismissals of counts II-V. [8]

7   Defendants assert that the Court's decisions in *Bell Atlantic Corp. v. Twombly, 127 S.Ct. 1955, 167 L. Ed. 2d 929 (2007)*, and *Leegin Creative Leather Products, Inc. v. PSKS, Inc., 127 S.Ct. 2705, 168 L. Ed. 2d 623 (2007)*, "dramatically altered the requirements for pleading a vertical resale price maintenance claim." (D.I. 323 at 10)

8  Having found the entry of final judgment appropriate under *Rule 54(b)*, the court need not address the parties' arguments under *28 U.S.C. § 1292(b)*.

## V. CONCLUSION

For the aforementioned reasons, the court denies plaintiffs' motion to supplement the record in *Hess.* The court grants  [*16] plaintiffs' motion requesting certification of the dismissal of counts II-V in *Jersey Dental.* Proceedings on count I will be stayed pending any appeal. An appropriate order shall issue.

## ORDER

At Wilmington this 8th day of January 2008, consistent with the memorandum opinion issued this same date;

IT IS ORDERED that:

1. Plaintiffs' motion to supplement the record in *Hess* (Civ. No. 99-255, D.I. 274) is denied.

2. Plaintiffs' motion for a certificate of appealability and for a stay of proceedings during the pendency of any appeal in *Jersey Dental* (Civ. No. 01-267, D.I. 318) is granted.

3. On or before January 31, 2008, the parties shall submit either a stipulation or competing orders in *Hess* and *Jersey Dental* in order to accommodate a consolidated appeal.

/s/ Sue L Robinson

United States District Judge.

LEXSEE 2007 U.S. DIST. LEXIS 27524

**KAB ENTERPRISE CO., Plaintiff, v. URSICH ELECTRIC PRODUCTS INC. and COLEMAN CABLE, INC., Defendants.**

**CIVIL ACTION NO. 06-4361**

**UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

*2007 U.S. Dist. LEXIS 27524*

**April 12, 2007, Decided
April 13, 2007, Filed**

**COUNSEL:** [*1] For KAB ENTERPRISE CO., LTD., Plaintiff: KAO H. LU, LEAD ATTORNEY, LU & ASSOCIATES, P.C., HAVERTOWN, PA; FRANK A. MAZZEO, FRANK A. MAZZEO, PC, COLMAR, PA.

For URSICH PRODUCTS, INC., Defendant: DONALD REED PIPER, JR., DANN, DORFMAN, HERRELL AND SKILLMAN, PHILADELPHIA, PA; LYNN CELESTE FISCHER, DANN DORFMAN HERRELL & SKILLMAN, PHILADELPHIA, PA.

For COLEMAN CABLE, INC., Defendant: DONALD REED PIPER, JR., DANN, DORFMAN, HERRELL AND SKILLMAN, PHILADELPHIA, PA.

**JUDGES:** RONALD L. BUCKWALTER, S.J.

**OPINION BY:** RONALD L. BUCKWALTER

**OPINION**

  *MEMORANDUM*

  BUCKWALTER, S.J.

  Presently before the Court are Defendant Ursich Electrical Products, Inc.'s Motion for Transfer pursuant to *28 U.S.C. § 1404(a)* from the Eastern District of Pennsylvania to the Northern District of Illinois, Eastern Division and Plaintiff's Motion in Opposition. For the reasons explained below, this case will be **TRANSFERRED** to the Northern District of Illinois, Eastern Division.

**I. BACKGROUND**

  Plaintiff, KAB Enterprise Co., is a Taiwanese corporation with its principal place of business in Taiwan. Defendant Ursich Electrical Products, Inc. ("UEP") is a corporation incorporated [*2] in Illinois with its principal place of business in Tinley Park, Illinois. Defendant Coleman Cable, Inc. ("Coleman") is incorporated in Delaware with its principal place of business in Waukegan, Illinois.

  On September 29, 2006, Plaintiff filed this action in the Eastern District of Pennsylvania against UEP and Coleman seeking a declaratory judgment that its products do not infringe on two patents owned by UEP which UEP licenses to Coleman. Presently before the Court is UEP's Motion to Transfer Venue to the Northern District of Illinois, Eastern Division pursuant to *28 U.S.C. § 1404(a)*. As further explained below, the Court has determined that for the convenience of the parties and in the interests of justice, it will transfer this case to the Northern District of Illinois, Eastern Division.

**II. STANDARD OF REVIEW**

  A court may transfer the venue of any civil action for the convenience of parties and witnesses or in the interests of justice, to any other district where it might have been brought. *28 U.S.C. § 1404(a)*. The purpose of this section is "to prevent the waste of 'time, energy and money' and 'to protect litigants, witnesses [*3] and the public against unnecessary inconvenience and expense.'" *Van Dusen v. Barrack, 376 U.S. 612, 616, 84 S. Ct. 805, 11 L.Ed.2d 945 (1964)* (quoting *Continental Grain Co. v. FBL-585, 364 U.S. 19, 26-27, 80 S. Ct. 1470, 4 L.Ed.2d 1540 (1960)*). Although *§ 1404(a)* gives a district court the discretion to decide a motion on a case-by-case basis, these motions are not to be granted liberally. *Shutte v. Armco Steel Corp., 431 F.2d 22, 25 (3d Cir. 1970)*.

  In ruling on a motion to transfer, a court should consider "all relevant factors to determine whether on balance the litigation would more conveniently proceed and

the interests of justice be better served by transfer to a different forum." *Jumara v. State Farm Ins. Co., 55 F.3d 873, 879 (3d Cir. 1995)*. The first step in a court's analysis of a transfer motion is to determine whether venue would be proper in the transferee district. If the first prong of the inquiry is satisfied, the court determines whether a transfer would be appropriate by weighing a series of private and public factors. *Id.* The private factors to be considered include: (1) plaintiff's choice [*4] of forum; (2) defendant's choice of forum; (3) where the claim arose; (4) convenience of the parties as indicated by their relative physical and financial conditions; (5) convenience of the witnesses -- but only to the extent that the witnesses may actually be unavailable for trial in one of the fora; and (6) location of books and records. *Id.* The public factors to be considered include: (7) enforceability of the judgment; (8) practical considerations that could make the trial easy, expeditious, or inexpensive; (9) level of court congestion in the two fora; (10) local interest in deciding local controversies; (11) public policies of the fora, and (12) in a diversity case, familiarity of the two courts with state law. *Id. at 879-880.* The party moving to transfer a case on grounds of inconvenience has the burden of showing that the existing forum is inconvenient. *Id. at 879.*

### III. DISCUSSION

#### A. First Prong -- Venue Proper in Transferee District:

The Court has determined that venue would be proper in the transferee district, Northern District of Illinois, Eastern Division. The properness of the transferee district has not been challenged;   [*5]   therefore, the Court will not further expound on this prong.

#### B. Second Prong -- Balancing of All Relevant Private and Public Factors:

#### 1. Private Factors:

The first factor to be weighed is the Plaintiff's choice of forum, as evidenced by where if filed suit, which is the Eastern District of Pennsylvania. Plaintiff's choice of forum is a significant factor and should not be disturbed lightly. *First Union Nat'l Bank v. United States, 55 F.Supp.2d 331, 332 (E.D.Pa. 1999).* However, where a plaintiff chooses a forum other than his state of residence or the situs of the occurrence upon which the suit is based, his choice is given less weight. *Remick v. Manfredy, 138 F. Supp. 2d 652, 655 (E.D.Pa. 2001).* In this case, the Plaintiff is a Taiwanese corporation with its principal place of business in Taiwan. Further since Plaintiff's products are sold throughout the United States

there is not one situs of occurrence. Therefore, the Plaintiff's choice of forum is given less weight.

The second factor to be consider is defendant's choice of forum. In this case, we only have Defendant UEP's choice of forum because Defendant Coleman did not join in [*6]  the transfer motion nor did it make a motion to keep the action in the Eastern District of Pennsylvania. [1] UEP's choice of forum is the Northern District of Illinois, Eastern Division. As the moving party, UEP has the burden of establishing that the interests of convenience and justice would be better served by the transfer of this case to the Northern District of Illinois, Eastern Division. *Jumara at 879.* The Court has determined that UEP has met its burden because none of the parties have any connection to the Eastern District of Pennsylvania. As previously stated, both Defendants' principal place of business are located in Illinois, and Plaintiff's principal place of business is in Taiwan. The only reason the Court has found that the Plaintiff filed in the Eastern District of Pennsylvania is because its attorney's firm is located in the Eastern District of Pennsylvania. That is an insufficient basis to keep this action in the Eastern District of Pennsylvania.

> 1   The Plaintiff has urged the Court to consider that Defendant UEP's filing of the motion to transfer venue was done by UEP instead of Coleman for a "purely tactical reason in an attempt to give the Court the impression that UEP [a one man company] would be inconvenienced by having this matter litigated in Pennsylvania." Pl's Opposition at 10. The Court does not find this argument relevant to the question of whether this case may be transferred.

[*7]   The third factor, where the claim arose, weighs in favor of UEP. The Plaintiff argues that because its products are sold throughout the United States, the claim arose in the Eastern District of Pennsylvania. While this may be accurate it would be more precise to conceive of the claim as arising in Illinois. After all, the Plaintiff is seeking a declaratory judgment that its products do not infringe on two patents owned by UEP and licensed to Coleman. Both UEP and Coleman have principal places of business in Illinois. Therefore, from a practical stand point the claim "arose" in Illinois.

The fourth factor is the convenience of the parties. This factor cuts in favor of neither party because both parties have made good convenience arguments for their particular forum choice. The Plaintiff argues that it is more convenient for it to litigate in the Eastern District of Pennsylvania because its attorney practices with a small firm that is located in this District and it is a company of limited resources. Meanwhile, UEP argues that it is more convenient for it to litigate in the Northern Dis-

trict of Illinois, Eastern Division because that is where it is incorporated and principally located. [*8] On balance the factor of convenience of the parties does not weigh in favor of either party and will therefore not be a factor considered in the Court's analysis.

The fifth factor is convenience of witnesses to the extent witnesses would be unavailable in one of the fora. The Court will not consider this factor because as the Plaintiff points out, UEP has not established that it would be burdensome for it to produce witnesses in the Eastern District of Pennsylvania.

The sixth and final private factor to be considered is the location of relevant documents. In light of current technology, this factor should not weigh heavily in its analysis. *IMS Health, Inc. v. Vality Tech. Inc., 59 F.Supp.2d 454, 470 (E.D. Pa. 1999)*. However, to the extent that documents would be produced, this factor weighs in favor of the UEP because its business is principally located in Illinois. Further, Plaintiff's documents are located in Taiwan so it would be no more burdensome to produce them in Illinois than in Pennsylvania. Therefore, although this factor will not be weighed heavily in light of current technology, it is a factor in favor of UEP.

**2. Public Factors:**

The seventh factor [*9] to be weighed is the enforceability of the judgment. In the present case, this factor will not be considered because the Court does not believe it would be difficult to enforce a declaratory judgment in either jurisdiction.

The eighth factor to be weighed is practical considerations that could make the trial easier, expeditious, or inexpensive. The Court has determined that this factor weighs in favor of Defendant UEP's choice of forum, Northern District of Illinois, Eastern Division, because it will be easier to litigate matters in a jurisdiction that has a connection to the subject of the litigation, i.e. two patents owned by UEP and licensed to Coleman. The only connection the Plaintiff has to the Eastern District of Pennsylvania is that its attorney works for a firm located in this District. Thus, the eighth factor will be weighed in favor of UEP.

The ninth factor is court congestion. The Court has found there to be little difference in the congestion

within either District and therefore, this factor will not be considered in its decision to transfer this case to the Northern District of Illinois, Eastern Division.

The tenth factor is local interest. The Court has determined [*10] that this factor weighs in favor of Defendant UEP because the Northern District of Illinois, Eastern Division has more of an interest in declaring whether patents owned by a company incorporated and located in its District are being infringed. The Plaintiff argues that because its products are sold throughout the United States and this is a patent infringement case, Pennsylvania has a local interest. The Court disagrees with Plaintiff's analysis because it implies any district court in the United States would have a local interest in this case. Instead, this Court has concluded that Northern District of Illinois, Eastern Division has the local interest because the declaratory judgment directly impacts the rights of a patent owner located and incorporated within the Northern District of Illinois, Eastern Division.

Factors eleven and twelve are not relevant to a balancing of the factors to determine which forum is more convenient because public policy is the same in both forums and this case is not before this Court based on diversity of the parties.

**IV. CONCLUSION**

For all the forgoing reasons, this Court finds that UEP has established that it is more convenient for the [*11] parties and the interests of justice will be better served by transferring this case to the United States District Court for the Northern District of Illinois, Eastern Division. An appropriate order follows.

*ORDER*

AND NOW, on this 12th day of April, 2007, upon consideration of Defendant UEP's Motion for Transfer (Docket No. 3) and Plaintiff's Motion in Opposition thereto (Docket No.6), it is hereby **ORDERED** that this case be **TRANSFERRED** to the Northern District of Illinois, Eastern Division.

This case is **CLOSED**.

BY THE COURT:

s/ Ronald L. Buckwalter, S. J.

LEXSEE 2007 U.S. DIST. LEXIS 48474



Analysis
As of: Jan 28, 2008

**NILESH KEDIA, Plaintiff, v. ALAN JAMAL and VINIT KESHARI, Defendants.**

**Civ. No. 06-6054 (GEB)**

**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEW JERSEY**

*2007 U.S. Dist. LEXIS 48474*

**July 5, 2007, Decided**
**July 5, 2007, Filed**

**NOTICE:** NOT FOR PUBLICATION

**PRIOR HISTORY:** *Kedia v. Jamal, 2007 U.S. Dist. LEXIS 30343 (D.N.J., Apr. 25, 2007)*

**COUNSEL:** [*1] For NILESH KEDIA, Plaintiff: CRAIG S. HILLIARD, LEAD ATTORNEY, STARK & STARK, PC, PRINCETON, NJ.

For ALAN JAMAL, VINIT KESHARI, Defendants: ELYSE C. HERMAN, LEAD ATTORNEY, PELLETTIERI, RABSTEIN AND ALTMAN, PRINCETON, NJ.

**JUDGES:** GARRETT E. BROWN, JR., U.S.D.J..

**OPINION BY:** GARRETT E. BROWN, JR.

**OPINION**

**MEMORANDUM OPINION**

**BROWN, Chief Judge**

This matter comes before the Court upon defendants Alan Jamal and Vinit Keshari's ("Defendants") Motion for Reconsideration of the Court's April 25, 2007, Opinion and Order. The Court has jurisdiction over this matter pursuant to *28 U.S.C. §§ 1332, 1441* and *1446.* The Court, having considered the parties' submissions and decided the matter without oral argument pursuant to *Federal Rules of Civil Procedure Rule 78,* and for the reasons set forth below, will deny Defendants' motion.

**I. BACKGROUND**

The factual background of this action is discussed at length in the April 25th Opinion at 1-4. In that Opinion, the Court denied Defendants' Motion to Dismiss or, in the Alternative, to Transfer Venue to the United States District Court for the District of Massachusetts pursuant to the first-filed rule. On May 9, 2007, Defendants filed the pending motion. Briefing on the matter now complete, the [*2] Court will address the pending motion.

**II. DISCUSSION**

**A. First-Filed Rule**

**1. The Parties' Arguments**

Defendants argue that the Court overlooked controlling law that establishes that the first-filed rule applies in this case. (Reconsideration Brief at 1). They cite to five cases that the Court has allegedly overlooked, not a single one of which was mentioned in the parties' moving papers. *Id.* at 3-4. The cases include: *In Kerotest Manufacturing Co. v. C-O-Two Fire Equipment Co., 189 F.2d 31 (3d Cir. 1951), aff'd by 342 U.S. 180, 72 S. Ct. 219, 96 L. Ed. 200, 1952 Dec. Comm'r Pat. 407 (1952)*; *American Telephone & Telegraph Co. v. MCI Communications Corp., 736 F. Supp. 1294 (D.N.J. 1990)*; *Glaxosmithkline Consumer Healthcare, L.P. v. Merix Pharmaceutical Corp., 2005 U.S. Dist. LEXIS 40007 (D.N.J. May 10, 2005)*; *Advanta Corp. v. Advanta Nat'l Bank U.S.A., 1997 U.S. Dist. LEXIS 2007, (E.D. Pa. February 19, 1997)*; *Hanover Fire & Casualty Insurance Co. v. Edwin Sieron, 2007 U.S. Dist. LEXIS 1901 (E.D. Pa. January 10, 2007).* Defendants argue that these support the proposition that the presence of Keshari in the

New Jersey but not the Massachusetts action does not prevent the application of the first-filed rule. *Id.* Defendants also for the first time offer [*3] evidence and arguments proving that the Massachusetts court has personal jurisdiction over Keshari. *Id.* at 11-13. The evidence includes an affidavit from Keshari, wherein he consents to the jurisdiction of the Massachusetts court. (Reconsideration Brief Ex. B P 8 (Kesahri Aff.)).

Nilesh Kedia argues that the Court correctly declined to apply the first-filed rule and that the standard governing motions for reconsideration strongly counsels against considering evidence and arguments that could have been raised in the moving papers but were not. (Opposition to Motion for Reconsideration at 4-7 & 9-11). Therefore, according to Kedia, the Court should decline to consider arguments concerning the Massachusetts court's jurisdiction over Keshari. *Id.* at 9-11.

## 2. Standard of Review

Motions for reconsideration are governed by *Local Civil Rule 7.1(i)*. These motions can succeed only upon a showing that either (1) the court overlooked "dispositive factual matters or controlling decisions of law" that were presented in the moving papers and "might reasonably have resulted in a different conclusion by the court," *United States v. Compaction Systems Corp., 88 F. Supp. 2d 339, 345-46 (D.N.J. 1999)*; (2) [*4] an intervening change in controlling law has occurred, *Electric Mobility Corp. v. Bourns Sensors/Controls, 87 F. Supp. 2d 394, 401 (D.N.J. 2000)*; or (3) evidence not previously available has become available, *Database America, Inc. v. Bellsouth Advertising & Publishing Corp., 825 F. Supp. 1216, 1220 (D.N.J. 1993)*.

Generally, the moving party is not entitled to raise new arguments that could have been addressed in the original moving and responsive papers. *Bowers v. NCAA, 130 F. Supp. 2d 610, 613 (D.N.J. 2001)* ("Not only are such motions not a substitute for the appellate process, such motions are *not* an opportunity to argue what could have been, but was not, argued in the original set of moving and responsive papers"); *NL Industries Inc. v. Commercial Union Ins. Co., 935 F. Supp. 513, 516 (D.N.J. 1996)* ("Reconsideration motions . . . may not be used to . . . raise arguments or present evidence that could have been raised prior to the entry of judgment.").

The term "overlooked matters" refers only to facts and legal arguments properly presented to the court in the moving papers, and not to matters presented for the first time in the motion for reconsideration. *Polizzi Meats, Inc. v. Aetna Life & Casualty Co., 931 F. Supp. 328, 339 (D.N.J. 1996)* [*5] ("[*Rule 7.1(i)*] explicitly invites counsel to draw the court's attention to decisions which may have been overlooked by the court, not those which were overlooked by counsel."). "A motion for reconsideration is improper when it is used 'to ask the Court to rethink what it had already thought through--rightly or wrongly.'" *Oritani S & L v. Fidelity & Deposit, 744 F. Supp. 1311, 1314 (D.N.J. 1990)* (quoting *Above the Belt v. Mel Bohannan Roofing, Inc., 99 F.R.D. 99, 101 (E.D. Va. 1983)*); *see also Koch Materials Co. v. Shore Slurry Seal, Inc., 209 F. Supp. 2d 418, 420 (D.N.J. 2002)* (declining to consider new argument on motion for reconsideration and noting, "[the defendant] must bear the burden of its own omissions. Otherwise, litigants, who too often will desire to delay, to increase the expense of litigation for their opposition, or simply to economize on their own research costs, will not have sufficient incentive to consolidate all the pertinent facts and law together in one . . . motion.").

In limited circumstances, *Rule 7.1(i)* is subject to relaxation by the court. *See, e.g., Panna v. Firstrust Sav. Bank, 760 F. Supp. 432, 435 (D.N.J. 1991)* ("There is nothing to prevent the court [*6] from examining new facts or evidence that might lead to a different result if considered by the court."); *Elizabethtown Water Co. v. Hartford Cas. Ins. Co., 998 F. Supp. 447, 460-461 (D.N.J. 1998)* (agreeing to consider new argument, but warning "other Courts might not be so lenient, and [plaintiff] should be more cautious when designing and writing its briefs."); *Union Steel America Co. v. M/V Sanko Spruce, 1998 U.S. Dist. LEXIS 18021, at *5 (D.N.J. 1998)* (agreeing to consider new case law because the "Court's consideration of the issue *sub judice* was to some degree *sua sponte,* since defendants now cite additional pertinent authorities, and in light of the specter of litigation in two countries with its attendant expense and risk of inconsistent results, this Court has given the issues presented at this stage of the case another searching review.").

However, some judges have refused to relax *Rule 7.1(i)*, particularly when the moving party sought to introduce evidence for the first time that was available at the time the court entered its original decision. *See e.g., Resorts Int'l v. Greate Bay Hotel and Casino, 830 F. Supp. 826, 831& n.3 (D.N.J. 1992)*. The *Resorts International* court [*7] disagreed with *Panna,* holding:

> it is well established in this district that a motion for reconsideration is an extremely limited procedural vehicle. . . . We feel that [the position taken in *Panna*] is without foundation, either in the language of Rule [7.1(i)] itself or in the vast majority of the interpretive cases of this court. We are in fact bound *not* to consider such new materials, lest the stric-

tures of our reconsideration rule erode entirely. [*Id*].

### 3. The Court will not Reconsider Decision not to Apply First-Filed Rule

The Court could not have "overlooked" the cases Defendants cite to in their Motion for Reconsideration within the meaning of *Rule 7.1(i)* because the parties did not mention these in their moving papers. Further, the cases were not controlling law at the time the Court entered its decision because Defendants failed to establish that identity of the parties could be created in Massachusetts action.

In the aforementioned cases, courts used their discretion to apply the first-filed rule despite a lack of identity of the parties or issues because identity could be created by means of a counterclaim, amended pleading, intervention or joinder. *See, e.g., Hanover Fire & Casualty Insurance Co., 2007 U.S. Dist. LEXIS 1901, at * 17* [*8] (applying first-filed rule because additional parties in second-filed action filed affidavits consenting to jurisdiction of the transferee court and Hanover's claims against Sieron and additional entities could be asserted in transferee court as counterclaims); *Advanta Corp., 1997 U.S. Dist. LEXIS 2007, * 6-7* (applying first-filed rule even though second-filed action contained additional party and involved different issues because identity in transferee court could be achieved through counterclaim. Opinion did not mention personal jurisdiction issues with respect to additional party); *American Telephone & Telegraph Co., 736 F. Supp. at 1305-1313* (transferring second-filed action pursuant to *Section 1404(a)* after establishing that transferee court had personal jurisdiction over additional party).

Similarly, in *Kerotest Manufacturing Co.,* the Third Circuit Court of Appeals stayed the prosecution of a Delaware action involving two parties, Kerotest Manufacturing Corporation ("Kerotest") and C-O-Two Fire Equipment Corporation, in favor of a first-filed Illinois action involving C-O-Two as the plaintiff, Acme Equipment Company, Inc., as the defendant and Kerotest as the subsequently joined [*9] co-defendant. *189 F.2d at 32.* The court based its decision on the fact that the Illinois court had jurisdiction over all of the relevant parties and was likely to resolve all issues pending in both actions, whereas the Delaware court did not have personal jurisdiction over Acme and was unable to resolve all outstanding issues. *Id. at 34.* In affirming the Third Circuit's decision, the Supreme Court held that the stay was proper because Kerotest was properly joined as a co-defendant in the Illinois action. *342 U.S. at 185-86.* The Supreme Court noted that if Kerotest could not have been joined, the court should have permitted both actions to proceed simultaneously. *Id.*

The fifth case, *Glaxosmithkline Consumer Healthcare, L.P., 2005 U.S. Dist. LEXIS 40007 at *23,* is distinguishable from the present action because it involved two actions that included the same parties but different issues. The court relied on Fifth Circuit precedent in stating that, "there is no requirement that the issues or the parties be identical." *Id. at *25.*

By contrast, this Court could not have applied the first-filed rule because it was unclear whether identity of the parties could be created in the Massachusetts [*10] action. Defendants failed to establish that the Massachusetts court has personal jurisdiction over Keshari, despite the fact that Kedia raised this issue in his Brief in Opposition to Defendants' Motion to Dismiss. April 25th Opinion at 8. Had the Court transferred this action without knowing whether Massachusetts has personal jurisdiction over Keshari, it would have risked depriving Kedia of the ability to pursue his claims against Keshari.

The Court will not exercise its discretion to consider the new cases in light of the new evidence concerning the Massachusetts court's personal jurisdiction over Keshari. This evidence should have been included in the defendants' moving papers. Defendants have proffered no excuse for failing to include it and no good reason for the Court to disregard the strong policy against considering evidence raised for the first time in a motion for reconsideration. The Court will not reconsider its decision not to dismiss or transfer this action pursuant to the first-filed rule.

### B. Transfer Pursuant to *Section 1404(a)*

### 1. The Parties' Arguments

Defendants argue that the Court erred by not considering whether to transfer Kedia's claims against Jamal pursuant to [*11] *28 U.S.C. §1404(a).* (Reconsideration Brief at 8). Although the defendants did not address severing Kedia's claims in their moving papers or specifically request transfer pursuant to *Section 1404(a),* they argue that in asserting that this action should be transferred pursuant to the first-filed rule, they addressed some factors courts consider in a *Section 1404(a)* analysis. *Id* at 8-10; *see also* (Brief in Support of Motion to Dismiss at 7-8); (Reply in Support of Motion to Dismiss at 5-6). According to Defendants, by not considering whether to sever the present action the Court overlooked these arguments. *Id.*

Kedia argues that the Court properly declined to server his claims because that would have forced him to prosecute the defamation case against Keshari in New

Jersey, while simultaneously prosecuting the same case against Jamal in Massachusetts. (Opposition to Motion for Reconsideration at 8). Such a ruling would be contrary to one of *Section 1404(a)*'s core aims--the avoidance of inconsistent judgments. *Id.* Also, Kedia argues that Defendants have failed to meet their burden of establishing that transfer pursuant to *Section 1404(a)* is warranted because they have not addressed all of [*12] the private and public interest factors involved in a *Section 1404(a)* analysis. *Id.* at 11. He argues that the balance of private and public interest factors weigh against a transfer. *Id.*

## 2. The Court will not Reconsider Decision not to Transfer

The Court did not err within the meaning of *Rule 7.1(i)* by not severing Kedia's claims. The Court did not address this possibility because the parties never raised it in their moving papers. Defendants' general allegations that various public interest factors favored a transfer of this entire action were not sufficient to indicate to the Court that Defendants wanted to sever Kedia's claims. Further, the Court could not have conducted a *Section 1404(a)* analysis with respect to Jamal only, because Defendants failed to address all of *Section 1404(a)*'s private and public interest factors. Therefore, the Court did not overlook arguments regarding severing Kedia's claims.

Additionally, the Court properly utilized its discretion in declining to transfer. *See, e.g., LG Elecs. Inc. v. First Int'l Computer, 138 F. Supp. 2d 574, 587 (D.N.J. 2001)* (decision to transfer is within court's discretion); *SportsMEDIA Technology Corp. v. Upchurch, 839 F. Supp. 8, 9-10 (D. Del. 1993)* [*13] ("district courts are vested with broad discretion in deciding whether to transfer a case to another district."). The Court agrees with Kedia's argument that severing this action could result in inconsistent judgments, and, thus, be contrary to *Section 1404(a)*'s core aims. [1]

> 1 The Court has considered the parties' arguments concerning the similarity of the claims involved in the present action and the Massachusetts action. The Court concludes that while these substantially overlap, allowing the claims to proceed in different courts is not likely to result in inconsistent judgments. First, the causes of action are distinct: the causes of action at issue in the present action are defamation and business disparagement, Complaint PP 21-30, whereas the cause of action at issue in Massachusetts is tortious interference with economic advantage, Counterclaim PP 79-83.

Second, the defamation and business disparagement claims are strictly based on the August 5, 2006, electronic email message that Keshari and Jamal allegedly circulated to SoftwareArt Corporation's ("SoftwareArt") employees, ex-employees and subcontractors, stating that Kedia defrauded and embezzled from SoftwareArt and that he lied [*14] to everyone. April 25th Opinion at 3-4. The tortious interference with economic advantage claim states that it is based on the following actions allegedly committed by Jamal and SoftwareArt:

> [R]e-routing Bramha business prospects to SoftwareArt and/or Maxima, diverting Bramha consultants to work for SoftwareArt and/or Maxima clients on SoftwareArt and/or Maxima projects, using Bramha funds for SoftwareArt and/or Maxima expenses, raiding Bramha and luring the Bramha consultants to work for SoftwareArt and /or Maxima, using Bramha moneys to pay for SoftwareArt and/or Maxima expenses, wrongfully withholding monies due to Bramha from certain clients . . .. [Counterclaim P 82].

While these claims do not appear to overlap, Kedia has alleged in the Massachusetts action that Jamal and his agents have made misrepresentations about him. These misrepresentations were allegedly made before the August 5th electronic mail. Specifically, the section of the Counterclaim titled "Background" states: "Since this litigation began, Jamal and/or other agents or employees of SoftwareArt have been misinforming Bramha consultants that . . . Kedia was fired from SoftwareArt for 'malpractice.'" Counterclaim P [*15] 53. Also, on April 5, 2006, Kedia's attorney wrote a letter to to Keshari, accusing him of "engaging in a series of communications with Bramha employees in an effort to disparage Bramha." (Reply in Support of Motion to Dismiss at 2). Kedia also stated in a response to an interrogatory in the Massachusetts action that "since this litigation began, Jamal and /or other agents or employees of SoftwareArt have been misinforming Bramha consultants that: Kedia was fired from SoftwareArt for 'malpractice' . . .. Thus, as a result of the Plaintiffs' tortious interference with

the economic advantage of Bramha and Kedia, Bramha and Kedia have been damaged." (Brief in Support of Motion to Dismiss at 5-6). While these alleged misrepresentations may play a role in the Massachusetts action in determining whether Jamal and/or his employees harmed Bramha, these are separate from the misrepresentations involved in the present action and do not comprise a defamation or business disparagement claim.

Third, while there is some overlap in the damages sought in both actions, these are primarily distinguishable. In the present action, Kedia seeks general and specific damages for the harm caused by the electronic [*16] mail to his per-

sonal and professional reputations, as well as to Bramha's business reputation, whereas in the Massachusetts action he seeks damages for the harm caused to Bramha's business. (Brief in Opposition to Motion for Reconsideration at 6-7).

## III. CONCLUSION

For these reasons, Defendants' Motion for Reconsideration is hereby denied. An appropriate form of order is filed herewith.

Dated: July 5, 2007

s/ Garrett E. Brown, Jr., U.S.D.J.

Westlaw.

Not Reported in F.Supp.　　　　　　　　　　　　　　　　　　　　　　　　　　　　Page 1
Not Reported in F.Supp., 1990 WL 145419 (E.D.Pa.)
**(Cite as: 1990 WL 145419 (E.D.Pa.))**

Only the Westlaw citation is currently available.

United States District Court, E.D. Pennsylvania.
PANACHE BROADCASTING OF
PENNSYLVANIA, INC., Plaintiff,
v.
RICHARDSON ELECTRONICS, LTD., Varian
Associates, Inc., and Varian Supply
Company, Defendants.
**CIV. A. No. 90-1358.**

Sept. 28, 1990.

Mark E. Kogan, Thomas S. McNamara, Abramson, Cogan, Kogan, Freedman & Thall, P.C., James G. Rosenberg, Scott D. Patterson, Paul M. Hummer, Saul, Ewing, Remick & Saul, Philadelphia, Pa., for plaintiff.

Mark A. Aronchick, Hangley Connolly Epstein Chicco Foxman & Ewing, Steven R. Fischer, Philadelphia, Pa., for defendants.

MEMORANDUM

NEWCOMER, Senior District Judge.

**\*1** This action is brought by a plaintiff which alleges to be representative of a nationwide class of all parties who have purchased electron power tubes from any one of the defendants. The defendants, Richardson Electronics, Ltd. ("Richardson"), Varian Associates, Inc. ("Varian"), and Varian Supply Company ("VASCO"), are not resident in this District. Defendants contend that the only true connection between this case and this District is that plaintiff and its lawyers reside here. Presently before the court is the Joint Motion of Defendants To Transfer Venue To The United States District Court For The Northern District of Illinois. For the reasons which follow, the court shall grant defendants' joint motion.

I. *Background*

Plaintiff Panache is a Delaware corporation with its principal and only place of business in the Eastern District of Pennsylvania, where it owns and operates a radio station known as WWDB-FM. Defendant Richardson is a Delaware corporation with its principal place of business in LaFox, Illinois, a

western suburb of Chicago. Defendant Varian is also a Delaware corporation with its principal place of business in Palo Alto, California. Defendant VASCO is a distribution joint venture between Richardson and Varian and is a California partnership with its principal place of business in LaFox, Illinois.

The three counts of the Complaint allege that Richardson, Varian, and VASCO have engaged in certain activities in purported violation of the U.S. antitrust laws. Plaintiff's allegations are fairly extensive and include: 1) 11 Richardson acquisitions of various electron power tube corporations and assets over a 9-year period; 2) the creation of the VASCO joint venture by Richardson and Varian; 3) a supply contract entered into by Richardson and a foreign corporation; 4) the activities of two officers and a former consultant of Richardson which are currently the subject of an ongoing criminal case in the Northern District of Illinois; and 5) unspecified other conduct.

Plaintiff in this action is only one of over 1,000 members of the purported nationwide class and accounts for a very small percentage of purchases from the defendants over the purported period. In fact, plaintiff has purchased less than 10 electron power tubes within the alleged damage period. (Affidavit of Leonard R. Prange ¶ 2).

II. *Standard*

Section 1404(a) of the Judicial Code, Title 28 of the United States Code provides:

"For the convenience of the parties and witnesses, in the interest of justice, a District Court may transfer any civil action to any other district or division where it might have been brought."

The first requirement for a transfer under Section 1404(a) is that the action can be transferred only to a district where the action might have been brought originally, that is, at the time the suit was originally commenced. *Professional Adjusting Systems of America, Inc. v. General Adjustment Bureau, Inc.,* 352 F.Supp. 648 (E.D.Pa.1972), *citing Van Dusen v. Barrack,* 376 U.S. 612 (1964).

**\*2** The second requirement is that the transfer must be "for the convenience of the parties and witnesses,

© 2008 Thomson/West. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp., 1990 WL 145419 (E.D.Pa.)
**(Cite as: 1990 WL 145419 (E.D.Pa.))**

in the interest of justice ...".  A plaintiff's choice of forum has been, and is, traditionally accorded great weight; however, because of the great number of persons with equal rights as plaintiff, and the large number of districts in which venue exists under the venue statutes, the weight accorded to plaintiff's choice of forum is to be reduced in class actions, especially in class actions of a national nature, that is, where the plaintiff class is scattered broadly throughout the country.  *Koster v. Lumberman's Mutual Casualty Co.,* 330 U.S. 518, 67 S.Ct. 828, 91 L.Ed. 1067 (1947).

III. *Discussion*

 The court finds that first requirement for a transfer has been satisfied here as there is no real question but that this suit could have been brought originally in the Northern District of Illinois.    Indeed, the defendants, in their memorandum in support of their joint motion, concede that venue in the Northern District of Illinois would have been proper under 28 U.S.C. § 1391(a) because:  (i) all three defendants conduct business there, and (ii) the substantial majority of facts alleged by plaintiff to give rise to its cause of action took place in the Northern District of Illinois.

 Furthermore, the court finds that the second requirement for transfer has also been satisfied here. Plaintiff Panache is but one of over 1,000 members of the purported nationwide class and accounts for "a minuscule percentage of purchases from defendants over the purported damage period."  (Defendants' Memorandum in Support of Joint Motion To Dismiss, pp. 1-2).   Plaintiff purchased less than 10 electron power tubes, within the alleged damage period, with a value of less than $1,000.   Moreover, almost every acquisition and contract alleged by plaintiff was negotiated in part and effected in the Northern District of Illinois.   The activities alleged in the indictment filed in the Northern District of Illinois allegedly took place, in substantial part, in the Northern District of Illinois.      Therefore, the defendants maintain that it is the Northern District of Illinois that has the nexus with the facts and that would be the more convenient forum for all parties.

 Plaintiff in this case will undoubtedly request the production of thousands of documents.  Defendants have represented that none of these documents are located in Pennsylvania and that, in fact, a substantial majority are expected to be located in Illinois with most of the remainder in California and a small number in Utah.   Furthermore, both plaintiff and

defendants likely will also seek the testimony of numerous current or former employees of the defendants who have detailed knowledge of the 13 specific transactions and other conduct alleged in the Complaint.   Again, defendants have represented that none of these individuals resides in Pennsylvania and that the substantial majority of employees and former employees of defendants expected to have knowledge of facts pertinent to the Complaint are located in Illinois with most of the remainder in California and a few in Utah.   Plaintiff also relies on the criminal case proceeding against two of defendant Richardson's officers in the Northern District of Illinois.   No evidence related to that action is in this District--almost all of the relevant evidence is in the Northern District of Illinois where the grand jury sat and the action is pending.

 **\*3**   After a careful review of the Complaint, Defendants' Joint Motion To Transfer, Memorandum, Plaintiff's Memorandum in Opposition, and the affidavits heretofore filed, the court is compelled to conclude that the aggregate convenience of the parties and witnesses, and the interest of justice, strongly militates for transfer of this matter to the Northern District of Illinois. Most of the evidence appears to be in that District.    A majority of the relevant witnesses seem to be there, or near there, with a great many of the rest certainly closer to the Northern District of Illinois than to this District. Accordingly, the court shall grant Defendants' Joint Motion To Transfer.

 An appropriate Order follows.

ORDER
 AND NOW, this 25th day of September, 1990, upon consideration of the Joint Motion of Defendants To Transfer Venue To The United States District Court For The Northern District of Illinois, and the response thereto, and consistent with the foregoing memorandum opinion, it is hereby Ordered that said motion is GRANTED and that this matter is TRANSFERRED to the United States District Court for the Northern District of Illinois.

 It is further Ordered that the Clerk TRANSFER the immediate case, and the entire file, forthwith to the United States District Court for the Northern District of Illinois.

 AND IT IS SO ORDERED.

 Not Reported in F.Supp., 1990 WL 145419 (E.D.Pa.)

© 2008 Thomson/West. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.
Not Reported in F.Supp., 1990 WL 145419 (E.D.Pa.)
**(Cite as: 1990 WL 145419 (E.D.Pa.))**

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d                                                        Page 1
Not Reported in F.Supp.2d, 2007 WL 2007977 (E.D.Pa.)
(Cite as: 2007 WL 2007977 (E.D.Pa.))

C

Only the Westlaw citation is currently available.

United States District Court,
E.D. Pennsylvania.
Adam SIMMENS, on Behalf of Himself and All
Others Similarly Situated,
Plaintiff,
v.
The COCA COLA COMPANY, Nestle USA, Inc.
and Beverage Partners Worldwide,
Defendants.
Civil Action No. 07-668.

July 5, 2007.

Sherrie R. Savett, Berger & Montague, PC, Philadelphia, PA, for Plaintiff.

Gita F. Rothschild, Mc Carter & English, Newark, NJ, Patrick W. Kittredge, Kittredge Donley Elson Fullem & Embick LLP, Philadelphia, PA, for Defendants.

***ORDER AND MEMORANDUM***
***ORDER***
JAN E. DuBOIS, J.

**\*1 AND NOW,** this 3rd day of July, 2007, upon consideration of Defendants' Motion to Transfer Pursuant to 28 U.S.C. § 1404(a) (Document No. 12, filed April 30, 2007); and Plaintiff's Memorandum of Law in Opposition to Defendants' Motion to Transfer Pursuant to 28 U.S.C. § 1404(a) (Document No. 30, filed June 15, 2007), **IT IS ORDERED** that Defendants' Motion to Transfer Pursuant to 28 U.S.C. § 1404(a) is **GRANTED.** The Clerk of the United States District Court for the Eastern District of Pennsylvania shall **TRANSFER** the case to the United States District Court for the District of New Jersey.

***MEMORANDUM***
**I. BACKGROUND**

Plaintiff filed this case as a class action arising out of allegedly improper marketing of Enviga, a carbonated green tea beverage by defendants The Coca-Cola Company, Nestlé USA, Inc., and Beverage Partners Worldwide. In advertising Enviga, defendants represent that the beverage burns more calories than it contains, resulting in negative calories for the consumer. [FN1] Plaintiffs contend that the claims made by defendants in marketing Enviga are not supported by evidence that most consumers would experience any calorie burning benefit. [FN2]

> FN1. These representations include advertising slogans such as "Be positive. Drink negaitve." and "Burning calories is now officially delicious." Compl. ¶ 29.

> FN2. The claim that consumption of Enviga results in negative calories is based on a study of "healthy normal weight 18-35 year olds" who consumed three cans of Enviga daily and were found to have increased their calorie burning by 60-100 calories. Compl. ¶ 27. Plaintiff argues that "[d]efendants failed to disclose that there are no studies that show that in the vast majority of the population, who are not between ages 18 and 35, or who are between ages of 18 to 35 but are not of a healthy normal weight, Enviga provides any calorie burning benefit." *Id.*

The Complaint was filed on February 20, 2007 "on behalf of all consumers of Enviga nationally" and "on behalf of a sub-class of consumers of Enviga residing in Pennsylvania." Compl. ¶ 2. The Complaint sets forth three counts against all defendants: breach of express warranty (Count I), breach of implied warranty of fitness for a particular purpose (Count II), and violations of Pennsylvania's Unfair Trade Practices and Consumer Protection Law ("UTPCPL"), 73 Pa. Cons.Stat. Ann. §§ 201-2, *et seq* (Count III). [FN3]

> FN3. Specifically, the Complaint alleges that defendants represented that Enviga has

Not Reported in F.Supp.2d, 2007 WL 2007977 (E.D.Pa.)
**(Cite as: 2007 WL 2007977 (E.D.Pa.))**

characteristics, uses, or benefits that it does not have in violation of 73 P.S. § 201-2(4)(v), and/or otherwise engaged in other fraudulent or deceptive conduct which created the likelihood of confusion or of misunderstanding in violation of 73 P.S. § 201-2(4)(xxi). Compl. ¶ 80.

Also on February 20, 2007, a nearly identical class action "on behalf of all consumers of Enviga nationally" and "on behalf of a sub-class of consumers of Enviga residing in New Jersey," was filed in the District of New Jersey by the same attorneys who represent the plaintiff in this case. *Melfi v. The Coca-Cola Co.,* CA No. 07-828. Prior to the filing of either class action, on February 1, 2007, the Center for Science in the Public Interest filed suit against the same defendants in the District of New Jersey. *Center for Science in the Public Interest v. The Coca-Cola Co.,* CA No. 07-539. The three complaints are nearly identical in their recitation of the facts.

On April 30, 2007, defendants jointly filed a Motion to Transfer pursuant to § 1404(a) and a Motion to Dismiss Counts II and III of the Complaint. For the following reasons, defendants' Motion to Transfer pursuant to § 1404(a) is granted and this case is transferred to the District of New Jersey. Because the case will be transferred, the Court does not address the Motion to Dismiss. [FN4]

> FN4. Additionally, the Court notes that a nearly identical Motion to Dismiss is pending in the *Melfi* action.

**II. LEGAL STANDARD**

The question before the Court is whether this case should be transferred to the District of New Jersey pursuant to 28 U.S.C. § 1404(a). 28 U.S.C. § 1404(a) permits transfer on the ground of venue, and states: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). Once a court determines that venue would be proper in another district, the court must

consider "all relevant factors to determine whether on balance the litigation would more conveniently proceed and the interests of justice be better served by transfer to a different forum." *Jumara v. State Farm Ins. Co.,* 55 F.3d 873, 879 (3d Cir.1995). The party moving to transfer venue bears the burden of establishing the need for the transfer. *Id.; Miller v. Consol. Rail Corp.,* 196 F.R.D. 22, 24 (E.D.Pa.2000).

**\*2** The Third Circuit has set out a number of public and private interests to be considered when weighing a transfer pursuant to § 1404(a). *Jumara,* 55 F.3d at 879. "Private interests" include plaintiff's forum preference as manifested in the original choice; defendant's preference; whether the claim arose elsewhere; the convenience of the parties as indicated by their relative physical and financial condition; the convenience of the witnesses; and the location of books and records. *Id.* at 879. "Public interests" include the enforceability of the judgment; practical considerations that could make the trial easy, expeditious, or inexpensive; the relative administrative difficulty in the two fora resulting from court congestion; the local interest in deciding local controversies at home; the public policies of the fora; and the familiarity of the trial judge with the applicable state law in diversity cases. *Id.* at 879-80.

**III. DISCUSSION**

Section 1404(a) requires the Court to answer two questions: (1) Could the case have been brought in the District of New Jersey? (2) Is a transfer in the interest of justice? With respect to the first question, a "district is one in which an action 'might have been brought' if that district has (1) subject matter jurisdiction over the claims; (2) personal jurisdiction over the parties; and (3) is a proper venue." *Yang v. Odom,* 409 F.Supp.2d 599, (citing *Shutte v. Armco Steel Corp.,* 431 F.2d 22, 24 (3d Cir.1970)). The Court concludes that the District of New Jersey is a district where this action might have been brought. There is no dispute that the District of New Jersey has the requisite jurisdiction over this case and is a proper venue to adjudicate

© 2008 Thomson/West. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2007 WL 2007977 (E.D.Pa.)
**(Cite as: 2007 WL 2007977 (E.D.Pa.))**

this case.

Accordingly, the Court must conclude whether a transfer is in the interests of justice. To make this determination, the Court will consider those relevant private and public interest factors that weigh in favor of and against a transfer.

**A. Factors Favoring Transfer**

Defendants argue that, under *Jumara,* the dispositive factor in this case is the pendency of the related *Melfi* case in the proposed transferee court. Specifically, defendants argue that because the cases "arise from the same set of facts and occurrences," and in fact the cases "are virtually identical," transfer is appropriate. Def. Mot. Trans. at 12. Although not argued in the Motion, the Court notes that the *Center for Science in the Public Interest* case filed in the District of New Jersey also arises from the same set of facts and occurrences and *Melfi* and the instant case.

The presence of related cases in the transferee forum is a strong factor in favor of transfer. *See, e.g., Schiller-Pfeiffer, Inc. v. County Home Prods., Inc.,* 2004 U.S. Dist. LEXIS 24180, *30 (E.D.Pa. Dec. 1, 2004) (holding that the presence of a related case in the transferee forum is a "strong reason" to grant a change of venue); *Weber v. Basic Comfort, Inc.,* 155 F.Supp.2d 283, 286 (E.D.Pa.2001) ("[C]ourts have found that the presence of related cases in the transferee forum is a reason to grant a transfer."). "In fact, courts in this District have concluded that this factor alone is sufficient to warrant a transfer," even when the convenience of the parties and witnesses would point to a denial. *Schiller-Pfeiffer,* 2004 U.S. Dist. LEXIS 24180, at *13; *Ayling v. Travelers Property Casualty Corp.,* 1999 U.S. Dist. LEXIS 16716, * 13 (E.D.Pa. Oct. 27, 1999); *see also, e.g., Southhampton Sports Zone, Inc.,* 2003 U.S. Dist. 18126, *5 (E.D.Pa. Sept. 10, 2003).

**\*3** The Supreme Court has stated that "to permit a situation in which two cases involving precisely the same issues are simultaneously pending in two different District Courts leads to the wastefulness of time, energy and money that § 1404(a) was de-

signed to prevent." *Continental Grain Co. v. The Barge FBL-585,* 364 U.S. 19, 26, 80 S.Ct. 1470, 4 L.Ed.2d 1540 (1960). Allowing two separate actions on behalf of the same class might lead to inconsistent results, even if the witnesses and documentary evidence were identical. *Ayling,* 1999 U.S. Dist. LEXIS 16716, at *14. This danger is of particular concern in this case as the pending Motion to Dismiss is nearly identical to a Motion to Dismiss pending in the *Melfi* action.

Moreover, transferring this action will benefit all parties because

the ... actions could be consolidated before one judge thereby promoting judicial efficiency, pretrial discovery could be conducted in an orderly manner, witnesses could be saved the time and expense of appearing at trial in more than one court, duplicative litigation involving the filing of records in both courts could be avoided eliminating unnecessary expense, and the possibility of inconsistent results could be avoided.

*Pall Corp. v. Bentley Lab., Inc.,* 523 F.Supp. 450, 453 (D.Del.1981). "Even though the claims of the two cases here are not exactly the same, they arise from the same set of facts and occurrences. If these actions were filed in the same district, consolidation would certainly be appropriate." *Schiller-Pfeiffer, Inc.,* 2004 U.S. Dist. LEXIS 24180, at *31.

Thus, the Court concludes that the pendency of two related cases in the District of New Jersey weighs strongly in favor of transferring this case.

**B. Factors Weighing Against Transfer**

Plaintiff argues that transfer is not necessary in this action and notes "it is precisely because this case and the New Jersey case [*Melfi* ] assert legal claims under their respective states' statutes that two separate complaints were filed on behalf of two separate subclasses." Pl.'s Resp. to Mot. to Trans. 3.

First, as noted by plaintiff, the Court must accord deference to plaintiff's initial choice of forum. However, defendants argue that as nominal representative of a purported nationwide class, plaintiff's choice of forum is entitled to minimum weight. *See*

© 2008 Thomson/West. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2007 WL 2007977 (E.D.Pa.)
**(Cite as: 2007 WL 2007977 (E.D.Pa.))**

*Koster v. Lumbermen's Mut. Cas. Co.,* 330 U.S. 518, 524, 67 S.Ct. 828, 91 L.Ed. 1067 (1947) ("[W]here there are hundreds of potential plaintiffs ... all of whom could with equal show of right go into their many home courts, the claim of any one plaintiff that a forum is appropriate merely because it is his home forum is considerably weakened."). Moreover, the purported class in this case is largely coextensive with that named in the District of New Jersey class action. Accordingly, the Court concludes that this factor does not weigh against transfer.

Second, plaintiff's argument that "consideration of the convenience of the parties, witnesses, and counsel, and the location of relevant documents, weighs in favor of denying a transfer" is unpersuasive. Pl.'s Resp. 7. Given the close proximity between the District of New Jersey and the Eastern District of Pennsylvania, these considerations are neutral and do not weigh against transfer.

*4 Plaintiff's most compelling argument against transfer is the fact that this case involves a purported Pennsylvania sub-class and a claim under Pennsylvania's UTPCPL. Although courts have held that it is desirable for issues of state law to be determined by a local federal court, *Howell v. Shaw Industries,* 1993 U.S. Dist. LEXIS 13562, *19 (E.D.Pa. Oct. 1, 1993), Pennsylvania subclass and Pennsylvania state law claims are not sufficient to weigh against transfer. In a similar case in which plaintiffs sought certification of a nationwide class and asserted claims under the Pennsylvania UTPCPL, Judge John R. Padova noted that because "class actions often require a federal court to apply the law of all fifty states," the UTPCPL claim alone did not weigh in favor of a transfer. *Rosen v. Fidelity Fixed Income Trust,* 1995 U.S. Dist. LEXIS 13877, *24 (E.D.Pa. Sept. 18, 1995). On that issue, Judge Padova noted that "either court can competently apply the law of any state." *Id.; see also Howell,* 1993 U.S. Dist. LEXIS 13784, at *19-20. Accordingly, as both this Court and the District of New Jersey can competently adjudicate plaintiff's claims, the Court concludes that this factor does not weigh against a transfer.

**IV. CONCLUSION**

In sum, after reviewing the relevant private and public interest factors, the Court concludes that defendants have demonstrated that the balance of fairness and convenience weighs strongly in favor of transfer of this case to the District of New Jersey. Accordingly, defendants' Motion to Transfer pursuant to § 1404(a) is granted and this case is transferred to the District of New Jersey.

Not Reported in F.Supp.2d, 2007 WL 2007977 (E.D.Pa.)

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. US Gov. Works.